1360

BLACKBURN AND COMPANY, INC., Respondent v. William G. DUDLEY, III and KTM Broadcasting Company, Inc., Appellants.

(381 S. E. (2d) 918)

Court of Appeals

*Mark H. Wall*, of *Robinson, Craver, Wall & Hastie*, Charleston, *for appellants*.

*Arnold S. Goodstein, Diane Schaffer Goodstein* and *Mary Ann Marwick*, all of *Goodstein & Goodstein*, Summerville, *for respondent*.

Heard March 20, 1989.

Decided June 26, 1989.

*Per Curiam:*

Blackburn and Company, Inc., sued William G. Dudley, III, and KTM Broadcasting Company, Inc., for breach of contract to pay a commission on the sale of a radio station. The jury awarded Blackburn a verdict of $20,000.01. The court granted Blackburn's motion for a new trial nisi additur. Unless Dudley and KTM agreed to a damage award of $91,000.00, the court ordered a new trial on the issue of damages. Dudley and KTM appeal. We affirm in part and reverse in part and remand.

Blackburn is a media brokerage firm which specializes in the sale and purchase of broadcast properties. KTM is a corporation that owned two radio stations in Charleston.

Ansley Cohen is a former owner of KTM and father-in-law of William Dudley, the owner of KTM at the time material to this suit.

In October of 1981, Cohen telephoned Jay Bowles, a broker for Blackburn, seeking a buyer for KTM. In November of 1981, Cohen was appointed an agent for KTM and given powers to negotiate and sell the stations. Subsequently, he sent Bowles an employment agreement which Bowles signed. The agreement provided:

> KTM hereby employs and appoints Blackburn as exclusive sales agent for broadcast properties named herein for a period of 30 days and thereafter until this agreement is revoked by either party by giving written notice 10 days prior to termination.

On April 12, 1982, Cohen telephoned Bowles and expressed his dissatisfaction with Blackburn's services. He stated that he wanted to consider other options. He requested an immediate cancellation of the exclusive listing, but offered to "protect" existing potential purchasers that Blackburn had already contacted. Bowles agreed.

To confirm the new arrangement, Bowles sent Cohen a letter which stated, in part:

> As discussed by telephone today, it is agreed that effective with today's date, our exclusive representation of you and Bill Dudley in the proposed sale of [KTM] ... shall be terminated.

The letter went on to request "protection" for certain named prospects whom Blackburn had already contacted. Bowles testified that, on May 18, 1982, he sent a letter to Dudley noting that, Carl Marcocci, one of the people Blackburn talked with originally, had recently expressed an interest in KTM.

In the following months, Bowles discussed the sale of KTM with Marcocci. In July 1982, Bowles sent Blackburn's presentation material on KTM to Marcocci. In late August 1982, pursuant to Marcocci's request, Bowles arranged a meeting between Marcocci, Dudley and Cohen. In mid-October, Bowles received Marcocci's offer to purchase KTM. He testified he forwarded this offer along with its cover letter to Dudley.

In late November or early December 1982, Marcocci entered into direct negotiations with KTM. Marcocci and Dudley negotiated a final contract with the assistance of their attorneys. Neither Bowles nor anyone else from Blackburn participated in the negotiations for the final contract. On January 14, 1983, Marcocci and Dudley signed the final contract. In February, 1983, Bowles learned of the sale and notified KTM and Marcocci that Blackburn was due a 5% commission. When they refused to pay the commission, this suit followed.

## I.

First, Dudley and KTM assert that the trial judge erred in failing to grant their motion for directed verdict or for judgment notwithstanding the verdict. Specifically, they argue the evidence of the existence of a binding contract between the parties was insufficient to submit the case to the jury.

In ruling on motions for a directed verdict and judgment notwithstanding the verdict, the trial judge must view the evidence and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party. If there is any evidence to sustain the factual findings implicit in the jury's verdict, this court must affirm. *Hilton Head Island Realty, Inc. v. Skull Creek Club*, 287 S. C. 530, 339 S. E. (2d) 890 (Ct. App. 1986).

Dudley and KTM maintain that the April 12th letter terminated the exclusive agency contract and that they are not liable for a commission on the subsequent sale. However, considered in light most favorable to Blackburn, there is evidence from which the jury could find (1) that the April 12th letter memorializes an oral agreement not only to terminate the exclusive listing, but also to allow Blackburn to continue to work with existing "protected" potential purchasers under the terms of the written contract; (2) that Marcocci was one of the original prospects contacted by Blackburn and was, therefore, a "protected" potential purchaser; (3) that the May 18th letter notified Dudley that Marcocci was a "protected" purchaser with an interest in the property; and (4) that Dudley and KTM breached the modified agreement by refusing to pay the commission after selling the station to a "protected" pur-

chaser. We therefore find no error in the denial of appellants' motion for a directed verdict.

## II.

Next, Dudley and KTM assert the trial judge erred in the admission of testimony from Bowles concerning the meaning and intent behind the April 12, 1982 letter. They contend such testimony constitutes inadmissible parol evidence.

In this case, Cohen's telephone call constituted an oral modification of the written agreement. *See e.g., Evatt v. Campbell,* 234 S. C. 1, 106 S. E. (2d) 447 (1959) (parties to a written contract may modify or supersede it by a subsequent oral agreement). The issue has been confused by Bowles's categorization of the agreement as a "nonexclusive listing." However, Cohen testified that in exchange for an immediate release from the contract, he gave Blackburn protection as to "any clients that [Blackburn] felt there was any possibility of him selling that he had contacted." Dudley's testimony confirmed the substance of the conversation. The trial judge did not err in admitting Bowles's testimony to show the terms of this oral modification. *See e.g., American Oil Company v. Cox,* 182 S. C. 419, 189 S. E. 660 (1937) (unquestionably, a written contract may be changed by a subsequent parol agreement, supported by consideration, and evidence is admissible in proof of such parol agreement).

## III.

Next, Dudley and KTM assert Dudley should be allowed to amend his answer to deny he personally was a party to the contract.

Although Dudley admitted in his pleading that he, KTM, and Blackburn entered into the employment agreement, the evidence at trial shows otherwise. Bowles testified the contract was with KTM and KTM was to pay the commission. Dudley testified that he did not sign the employment agreement. His testimony is corroborated by the written agreement admitted into evidence, which does not have Dudley's signature. All of this evidence came in without objection.

Under these circumstances, the trial court should have granted Dudley's motion to amend the pleadings to conform

to the evidence. Rule 15(b) of S.C.R. Civ. P. provides in part:

> When issues not raised by the pleadings are tried by ...
> implied consent of the parties, they shall be treated in
> all respects as if they had been raised in the pleadings.
> Such amendment of the pleadings as may be necessary
> to cause them to conform to the evidence and to raise
> these issues may be made upon motion of any party at
> any time, even after judgment

* * * * * *

By failing to object to the evidence that Dudley was not a
party to the contract, Blackburn impliedly consented to try
the issue. Therefore, pursuant to Rule 15(b), the trial judge
should have granted Dudley's motion to amend.

Instead, the judge denied the motion, finding Blackburn
would be prejudiced by the amendment. A claim of prejudice
must be preserved by a prior objection to admission of the
evidence. *Woods v. Rabon*, 295 S. C. 343, 368 S. E. (2d) 471
(Ct. App. 1988). As we have already observed, Blackburn
allowed evidence that Dudley was not a party to the contract
to come in without objection. Therefore, it waived any claim
of prejudice. *Id.*

In conjunction with the motion to amend, Dudley also
moved for a directed verdict on his individual liability under
the contract. Viewing the evidence most favorable to Black-
burn, the evidence allows only one inference: that Dudley
was not a party to the contract. Even Blackburn's own
witness, Bowles, testified that the contract was with KTM
and KTM was to pay the commission. Consequently, Dud-
ley's motion for a directed verdict should also have been
granted.

We remand with instructions that the trial court grant
the motion to amend the pleadings and grant Dudley's mo-
tion for a directed verdict on this issue.

IV.

Finally, Dudley and KTM assert the trial judge erred
in granting the new trial nisi additur and denying a
new trial absolute on both liability and damages. We
disagree.

The jury returned a verdict for Blackburn in the amount of $20,000.01. The record shows the final sales price was $1,820,000.00. The employment agreement provided for a 5% commission of the gross price received. Thus, the trial judge found the evidence presented demonstrated damages in the amount of $91,000.00.

A new trial on a particular issue is appropriate in the interest of judicial economy. *Graham v. Whitaker*, 282 S. C. 393, 321 S. E. (2d) 40 (1984). Generally, if there are no errors of law as relate to the trial of the liability issue, only the matter of ascertaining the amount of damages need be tried again. *Id.* In the case at bar, the jury found for Blackburn on the liability issue. The $20,000.01 was clearly inadequate in light of the evidence. We find no error in granting the new trial nisi additur on the issue of damages only.[1]

Affirmed in part, reversed in part and remanded.

SHAW, BELL and GOOLSBY, JJ., concur.

[1] While the appellants question the constitutionality of a new trial solely on the issue of damages, no such argument was made to the lower court.