1429

Bobby E. HOBGOOD, Respondent v. Horace H. PENNINGTON, Dan C. Gunter, Jr., Pennington Realty, Inc., a South Carolina Corporation and The Gastonia Group, Inc., a South Carolina Corporation, Defendants,

Of whom Pennington Realty, Inc. and The Gastonia Group, Inc., are, Appellants.

Appeal of PENNINGTON REALTY, INC., and The Gastonia Group, Inc.

(387 S. E. (2d) 690)

Court of Appeals

*G. Michael Smith,* Myrtle Beach, *for appellants.*

*Howell V. Bellamy* and *Preston B. Haines, III,* Myrtle Beach, *for respondent.*

Heard No. 8, 1989.

Decided Dec. 11, 1989.

GARDNER, Judge:

Bobby E. Hobgood (Hobgood) sued Pennington Realty, Inc. (Pennington Realty), The Gastonia Group, Inc. (The Gastonia Group), Horace H. Pennington (Pennington) and Dan C. Gunter, Jr. (Gunter) for intentional interference with a contractual relationship. Upon trial, the jury returned a verdict for Hobgood. We affirm.

## ISSUES

The only issue of merit is whether (1) there is any evidence of record that a contract existed between Hobgood and Johnny and Vanessa Cox (the Coxes).

## FACTS

We review the facts in a light most favorable to Hobgood. The Gastonia Group was the developer of a 21-unit condominium complex in North Myrtle Beach, South Carolina, known as the Ocean Drive Dunes Horizontal Property Regime. Horace Pennington (Pennington) was a 50 percent owner in and President of The Gastonia Group. Gunter was the secretary of The Gastonia Group; the record does not disclose his percentage of interest in The Gastonia Group. Pennington Realty entered into a contract with The Gastonia Group to market and sell the condominium units. Pennington was a 50 percent owner of Pennington Realty and the broker in charge.

In order to obtain financing, all 21 units in the condominium complex had to be "pre-sold." Hobgood, along with other sales persons working with Pennington Realty, purchased some of the units at a reduced price.

There is of record a contract of sale between Hobgood and The Gastonia Group which is dated February 19, 1986. The contract provides, *inter alia*, (1) that Hobgood will buy and The Gastonia Group will sell Unit 5 of Ocean Drive Dunes Building A, (2) that it is subject to all governmental ordinances, etc., (3) that the purchase price is $59,900.00 and recites a down payment of $2,500.00, (4) that it is subject to the purchaser's obtaining financing and (5) that possession of the premises will be given the purchaser on or before the closing date of June 1, 1987. Importantly, the contract does not provide a provision that time is of the essence.

Thereafter, Hobgood entered into a similar contract of sale with the Coxes. This contract was the same as the contract between Hobgood and The Gastonia Group except that the selling price was $74,900.00 and the closing date was June 15, 1987.

The record reflects that the condominiums were not completed by June 1 and that the City of North Myrtle Beach did not issue a certificate of occupancy until June 11, 1987.

On June 15, 1987, Pennington wrote Hobgood that the closing of all units had to occur before July 15, 1987. Upon receipt of the letter, Hobgood talked to Pennington and according to his testimony, was told not to worry about it and that as long as the unit was under contract and/or a loan was in process, there would be no problem. Pennington,

in his testimony, admitted that the July 15 date was really not enforced and that several units were closed after July 15 and that if a loan was in process there would not be any problem.

Although Hobgood's contract with the Coxes provided that the Coxes would obtain financing for the purchase of Unit 5, he voluntarily assisted the Coxes in arranging financing. The people that Hobgood dealt with would not agree to finance the property for $74,900.00. Hobgood, according to his testimony, reduced the sales price to $70,000.00 and thereby obtained financing for the Coxes. Hobgood testified that the Coxes agreed by telephone to this modification and that the closing would be extended until sometime in August 1987.

Lynn Dunn was called as a witness for Hobgood. She testified that she handled the real estate closing for Jim Pike, who was the closing attorney for the savings and loan association with whom Hobgood had arranged financing for the Coxes. She testified that on August 4, 1987, she forwarded a loan package to the Coxes providing for financing for Unit 5. She testified that when the loan package was returned to her on about August 11 or 12, 1987, the Coxes had stricken Unit 5 and in its place inserted Unit 2.

Hobgood testified that he first learned of the Coxes intent to purchase Unit 2 August 15 when he talked to the closing attorney about his plan to close with the Coxes.

Hobgood attempted to communicate with Pennington but was unable to find him and on August 20, 1987, Hobgood wrote The Gastonia Group a letter in which he reviewed the history of this situation and stated that he objected to Pennington's interfering with his contract with the Coxes. There is of record a check dated two days later, i.e., August 22, 1987, from the Coxes to Pennington for the purchase of Unit 2. This check was never cashed.

There is a deed of record from The Gastonia Group to the Coxes for Unit 2. This deed is dated August 27, 1987. Interestingly, the record reflects that the same loan package which Hobgood had negotiated for the Coxes was used in the closing of August 27, 1987. It is also interesting that Pennington did not cash the Coxes' check but used instead Hobgood's earnest money to close the sale to the Coxes.

It is undisputed of record that Pennington knew of Hobgood's contract with the Coxes when it was originally executed, knew of the amended contract and also used Hobgood's loan package to complete the contract with the Coxes. Moreover, he never raised with Hobgood the issue of the dual contracts prior to the time he completed the sale of Unit 2.

## I.

The contention of Pennington and The Gastonia Group is that the trial judge erred in failing to direct a verdict and in overruling their post-judgment verdict for n.o.v.

In ruling upon motions for directed verdict and judgment n.o.v., the trial judge must view the evidence and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party. If there is any evidence to sustain the factual findings implicit in the jury's verdict, this court must affirm. *Blackburn and Co., Inc. v. Dudley*, 298 S. C. 538, 381 S. E. (2d) 918, 919 (Ct. App. 1989).

In order to establish an action for intentional interference with a contract, the plaintiff must establish (1) the existence of the contract, (2) the wrongdoer's knowledge of the contract, (3) the intentional procurement of its breach, (4) the absence of justification, and (5) resulting damages. *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 287 S. C. 190, 193, 336 S. E. (2d) 472, 473 (1985). *Also see Bocook Outdoor Media, Inc. v. Summey Outdoor Advertising, Inc.*, 294 S. C. 169, 363 S. E. (2d) 390 (Ct. App. 1987).

The appellants first argue that the contract between Hobgood and The Gastonia Group had expired because the time for closing was of the essence and since there was no written memorandum of an extension, the statute of frauds was violated.

The contract between Hobgood and The Gastonia Group provided that it was subject to all governmental statutes, ordinances, rules and regulations. As has been noted, the certificate of occupancy for the condominium was issued by the City of Myrtle Beach on June 11, 1987, some eleven days after the date set for closing in the contract between Hobgood and The Gastonia Group. Thus it appears that The

Gastonia Group was not able to comply on the closing date of June 1, 1987.

It is well established in this state that time is not of ■ the essence of a contract to convey land unless made so by its terms expressly or by implication from the nature of the subject matter, the object of the contract or the situation or conduct of the parties. When the contract does not include a provision that time is of the essence, the law implies that it is to be done within a reasonable time; and the failure to incorporate in the memorandum such a statement does not render it insufficient. *Speed v. Speed,* 213 S. C. 401, 49 S. E. (2d) 588 (1948).

The original contract between Hobgood and The Gas- ■■ tonia Group did not include a provision to the effect that time was of the essence. Pennington, nevertheless, argues that his letter of June 15 to the effect that the closing of all units had to occur before July 15, 1987, constitutes an agreement that time is of the essence. Where time is not originally of the essence, it may be made so by one party giving notice to the other that he will insist on performance by a certain date, provided the time allowed by the notice is reasonable, which is a question of fact for the jury depending on the circumstances of the particular case. *Bishop v. Tolbert,* 249 S. C. 289, 153 S. E. (2d) 912 (1967). We hold that under the rule set forth in *Speed v. Speed, supra,* and *Bishop v. Tolbert, supra,* whether time was of the essence in the closing of the sale was a question for the jury.

The jury charge given by the trial judge at the close ■■ of the evidence is not contained in the record before us. The burden is on the appealing party to present a sufficient record from which this court can determine whether the trial judge erred. *Germain v. Nichol,* 278 S. C. 508, 299 S. E. (2d) 335 (1983). Since the appellant does not include in the record the jury charge and since the record contains no exception relating to this, we must conclude on appeal that the trial judge gave adequate instructions on every issue relating to this case. *See Floyd v. Country Squire Mobile Homes, Inc.,* 287 S. C. 51, 336 S. E. (2d) 502 (Ct. App. 1985).

In accordance with the above rule, we must conclude that the trial judge gave adequate jury instructions to determine

whether time was made of the essence in the Hobgood-The Gastonia Group contract of sale and that the jury resolved this question against Pennington and the other appellants. And we so hold.

The appellants next argue that the contract between Hobgood and the Coxes had expired. This is based upon testimony to the effect that the Coxes wrote the savings and loan a letter on or about August 11, 1987, to the effect that their contract with Hobgood had expired.

The contract between Hobgood and the Coxes was a ▮▮▮ valid contract enforceable by Hobgood if the Coxes defaulted. Although the contract was subject to the purchasers' obtaining financing, the record discloses that Hobgood did obtain financing for the Coxes for a reduced price. Hobgood testified that in a telephone conversation, he told the Coxes about the financing arrangement and the reduced price and that they agreed to it. A written contract may be modified by oral agreement.[1] *Lazer Const. Co., Inc. v. Long*, 296 S. C. 127, 370 S. E. (2d) 900 (Ct. App. 1988). Whether there was a meeting of the minds between Hobgood and the Coxes about the financing agreement was a question of fact for the jury to decide. Under the rules above stated, we assume this issue was submitted to the jury and resolved against the appellants. And we so hold.

## CONCLUSION

For the reasons stated, we hold (1) whether there was a valid contract between Hobgood and The Gastonia Group at the time of the sale of Unit 2 to the Coxes was a question of fact for the jury resolved against the appellants and (2) whether there was a valid contract between Hobgood and the Coxes at the time that Unit 2 was sold to the Coxes was a question of fact resolved against the appellants by the jury. For these reasons, the appealed order is affirmed.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.

---

[1] The statute of frauds is not pertinent to this case because a stranger to an oral contract cannot avail himself of the fact that the statute of frauds renders the contract unenforceable. *Hatcher v. Harleysville Mut. Ins. Co.*, 266 S. C. 548, 225 S. E. (2d) 181 (1976).