# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Barry Clarke, Petitioner,

v.

Fine Housing, Inc. and RRJR, L.L.C., Defendants,

of which Fine Housing, Inc. is the Respondent.

Appellate Case No. 2020-001371

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
J.C. Nicholson Jr., Circuit Court Judge

---

Opinion No. 28126
Heard April 5, 2022 – Filed January 4, 2023

---

## AFFIRMED

---

Thomas R. Goldstein, of Belk, Cobb, Infinger & Goldstein, P.A., of North Charleston, and Ashley G. Andrews, of LaFond Law Group, P.A., of Charleston, for Petitioner.

W. Cliff Moore III and Kirby D. Shealy III, both of Adams and Reese, LLP, of Columbia, for Respondent.

---

**JUSTICE JAMES:** Barry Clarke brought this action for specific performance of a right of first refusal. The trial court ruled for Clarke and ordered Fine Housing, Inc. to convey certain real property to Clarke. The court of appeals reversed, holding the right of first refusal is unenforceable. *Clarke v. Fine Housing, Inc.*, Op. No. 2020-UP-238 (S.C. Ct. App. filed Aug. 12, 2020). We affirm.

## I.

Clarke owned a strip club at 2015 Pittsburgh Avenue in Charleston. Group Investment Company, Inc., whose shareholders were John Robinson and Robin Robinson, owned a strip club across the street at 2028 Pittsburgh Avenue (the Subject Property). The Subject Property includes buildings, a parking lot, and other land. In 1999, Clarke and Group Investment entered into a recorded lease (the Lease) that allowed Clarke to use half of the parking spaces located on the Subject Property.

Pertinent Lease provisions include Section 1.1, which states, "Lessee hereby leases from Lessor the property generally described in Exhibit 'A' attached hereto." Section 2.1 provides, "The premises is unimproved property to be used as a parking lot by both the Lessor and the Lessee." The parties agree the "unimproved property" is the parking spaces. Section 7.1 provides, "The Lessee and Lessor shall be entitled to use of one half (1/2) of the spaces contained in the parking lot [which encumbrances all of the property described in Exhibit A]." Clarke agrees he was not entitled to use any portion of the Subject Property other than the parking spaces during the term of the Lease. Clarke argues Section 5.2 of the Lease provides him a right of first refusal (the Right) to buy the entire Subject Property; however, the entirety of Section 5.2 states, "Right of First Refusal: Lessor grants the Lessee the right of first refusal should it wish to sell." Section 5.2 does not state what property—the leased parking spaces or all of the Subject Property—is encumbered by the Right. Also, there are no provisions in Section 5.2 or elsewhere in the Lease stating either how the purchase price would be set when the time came for Clarke to exercise the Right or what procedures would govern Clarke's exercise of the Right.

In 2007, Group Investment conveyed the Subject Property to RRJR, LLC for the stated consideration of $5.00. John Robinson and Robin Robinson were members of RRJR. Clarke testified he "probably" knew Group Investment transferred the Subject Property to RRJR, but Clarke claimed he did not seek to exercise the Right at that time because Group Investment and RRJR were "the same people."

In 2013, RRJR conveyed the Subject Property to Fine Housing for $150,000.00.[1] Fine Housing's closing attorney did not take note of the Lease or the Right prior to the closing, but Fine Housing concedes it had record notice of both the Lease and the Right. Neither Fine Housing nor RRJR notified Clarke of the sale of the Subject Property.

Clarke learned of the sale to Fine Housing in March 2014, and in May 2015, Clarke initiated this action for specific performance against Fine Housing and RRJR. RRJR did not answer and is in default. After a bench trial, the trial court ruled the Right is enforceable as to the entire Subject Property and ordered Fine Housing to convey title to the Subject Property to Clarke upon his payment of $350,000.00. The court of appeals reversed, holding the Right is an unreasonable restraint on alienation and is therefore unenforceable.

## II.

South Carolina law prohibits the enforcement of unreasonable restraints on alienation of real property. *Wise v. Poston*, 281 S.C. 574, 579, 316 S.E.2d 412, 415 (Ct. App. 1984) ("Under South Carolina common law, any unreasonable limitation upon the power of alienation is against public policy and must be construed as having no force and effect."). In general, a right of first refusal requires the property owner, when and if he decides to sell, to first offer the property to the holder of the right of first refusal. *See Webb v. Reames*, 326 S.C. 444, 446, 485 S.E.2d 384, 385 (Ct. App. 1997). Accordingly, a right of first refusal restrains an owner's power of alienation to a degree by requiring the owner to offer the property first to the holder of the right. *See Cnty. of Jackson v. Nichols*, 623 S.E.2d 277, 280 (N.C. Ct. App. 2005).

The question of whether a right of first refusal is enforceable turns upon whether the right <u>unreasonably</u> restrains alienation. *See Wise*, 281 S.C. at 579, 316 S.E.2d at 415. The Restatement (Third) of Property provides, "A servitude that imposes a direct restraint on alienation of the burdened estate is invalid if the restraint is unreasonable. Reasonableness is determined by weighing the utility of the restraint against the injurious consequences of enforcing the restraint." Restatement (Third) of Property: Servitudes § 3.4 (Am. L. Inst. 2000). Comment *f* to section 3.4 of the Restatement addresses rights of first refusal: "Whether a right

---

[1] Clarke discusses the lead-up to the sale of the Subject Property to Fine Housing at length in his brief. Clarke argues Fine Housing employed "predatory" tactics to exploit RRJR and obtain title to the Subject Property. Because resolution of this appeal turns solely on the validity of the Right, Fine Housing's conduct is irrelevant.

of first refusal is valid depends on the legitimacy of the purpose, the price at which the holder may purchase the land, and the procedures for exercising the right."

Many state courts apply the Restatement factors to determine—in a case-by-case fashion—whether a right of first refusal unreasonably restrains alienation. *See, e.g.*, *SKI, Ltd. v. Mountainside Props., Inc.*, 114 A.3d 1169, 1178 (Vt. 2015) (analyzing the purpose of the right, the price, and the clarity of the procedures for exercising the right to determine its impact on alienability); *MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.*, 864 N.W.2d 83, 91-93 (Wis. 2015) (same); *Low v. Spellman*, 629 A.2d 57, 59 (Me. 1993) (same); *Wildenstein & Co., Inc. v. Wallis*, 595 N.E.2d 828, 832 (N.Y. 1992) (same); *Hartnett v. Jones*, 629 P.2d 1357, 1363 (Wyo. 1981) (same). We agree with the Restatement approach and hold the factors to be considered in assessing whether a right of first refusal unreasonably restrains alienation include (1) the legitimacy of the purpose of the right, (2) the price at which the right may be exercised, and (3) the procedures for exercising the right. These factors are not exclusive, and in this case, we will address another point raised by Fine Housing—the lack of clarity as to what real property the Right encumbers.[2]

## III.

Clarke argues the court of appeals erred in holding the Right is an unreasonable restraint on alienation and contends the Right contains clear provisions respecting the property encumbered by the Right and the price he would pay to acquire the Subject Property. He argues it was not necessary for the Right to spell out the procedures governing his exercise of the Right. Specifically, Clarke claims (1) the Lease provides the Right applies to all of the Subject Property, (2) the Right leaves the price to be determined by the seller, and (3) South Carolina law requires the Right to be exercised within a reasonable time.[3] Because Clarke's action for specific performance is one in equity, we apply a de novo standard of review to the question whether the Right is an unreasonable restraint on alienation. *See Campbell v. Carr*, 361 S.C. 258, 262-63, 603 S.E.2d 625, 627 (Ct. App. 2004).

---

[2] Fine Housing does not challenge the legitimacy of the purpose of the Right.

[3] Clarke also argues the court of appeals "erred in drawing inferences from John and Robin Robinson's absence from trial." This argument was not in Clarke's petition for rehearing to the court of appeals or his petition for a writ of certiorari; therefore, it is unpreserved. Rule 242(d)(2), SCACR; *Sloan v. Dep't of Transp.*, 365 S.C. 299, 307-08, 618 S.E.2d 876, 880 (2005) (noting an issue not raised in a petition for rehearing and petition for writ of certiorari is unpreserved for review).

## A. What real property is encumbered by the Right?

Typically, the identity of the property encumbered by a right of first refusal is obvious from a plain reading of the instrument. Here, however, the Right is buried in a lease of parking spaces, and the Lease contains Exhibit A—the description of the Subject Property, which includes the buildings, the leased parking spaces, other parking spaces, and other land. The Restatement does not address whether a lack of clarity as to the real property encumbered by a right of first refusal is a factor to consider in determining whether a right of first refusal is an unreasonable restraint on alienation. We hold it is a valid consideration in this case.

Clarke relies on Section 1.1 of the Lease to support his argument that the Right unambiguously applies to all of the Subject Property. Section 1.1 states, "Lessee hereby leases from Lessor the property generally described in Exhibit 'A' attached hereto." Fine Housing argues Exhibit A "merely identified the location of the leased parking spaces" and "[t]he remaining language of the Lease does not provide the clarity needed to identify the property intended to be encumbered by the Right." Fine Housing argues the uncertainty about the property the Right encumbers supports the conclusion that the Right is an unreasonable restraint on alienation.

We agree with Fine Housing. The Lease is unclear as to whether the Right encumbers all of the Subject Property or only the leased parking spaces. Section 5.2 states in its entirety, "Right of First Refusal: Lessor grants the Lessee the right of first refusal should it wish to sell." This begs the obvious question, Sell what? Section 1.1 and Exhibit A do not support the conclusion that the Right applies to all of the Subject Property. Other provisions in the Lease strongly indicate the Right encumbers only the leased parking spaces. Section 2.1 provides, "The premises is unimproved property to be used as a parking lot by both the Lessor and the Lessee." Section 7.1 provides, "The Lessee and Lessor shall be entitled to use of one half (1/2) of the spaces contained in the parking lot [which encumbrances all of the property described in Exhibit A]." Section 7.1 establishes Exhibit A serves solely to identify the location of the parking lot and the parking spaces leased by Clarke.

As noted above, the Restatement does not address the effect on alienation when a right of first refusal is not clear as to the property it encumbers, and we have found no published decisions discussing this precise issue.[4] Nevertheless, it is

---

[4] The Iowa Court of Appeals issued an unpublished decision in which the court partially based its holding that a right was unenforceable on the lack of clarity

readily apparent that a right of first refusal that does not identify the property it encumbers can substantially restrain alienation of real property. We hold, under the facts of this case, the uncertainty as to what property is encumbered by the Right supports the conclusion that the Right is an unreasonable restraint on alienation.

## B. Price

In general, provisions governing the price at which a right of first refusal may be exercised are important in assessing the impact on alienation. For example, a right of first refusal that may be exercised at a fixed price can substantially restrain alienation. *See Selig v. State Highway Admin.*, 861 A.2d 710, 719 (Md. 2004) (explaining that a right of first refusal allowing the holder to purchase the property at a fixed price inhibits alienability because with the passage of time, the fixed price may bear no relationship to market value). However, where the holder of the right may match the offer of a third party, the restraint on alienation may be lessened. *See Shiver v. Benton*, 304 S.E.2d 903, 905 (Ga. 1983) ("If the holder of the preemption right is merely entitled to meet the offer of an open market purchaser, there is little clog on alienability.").

Clarke emphasizes that the Right does not provide a fixed price at which he could purchase the Subject Property. Clarke first contends the Right left the sales price to be determined entirely by RRJR and simply required him to "match whatever offer [RRJR] received" from a third party. Clarke alternatively contends the exercise of the Right would have, to the benefit of RRJR, "touched off a bidding competition for the property." Fine Housing argues the Right's failure to provide any method for determining the price at which Clarke could exercise the Right creates an unreasonable restraint on alienation.

We agree with Fine Housing. The Right contains no price provisions at all. Although a right of first refusal that is silent as to price might not restrain alienation to the same degree as a right of first refusal containing a fixed price, a right of first refusal should contain some method for determining the price at which it may be exercised. If the Right provided that Clarke could acquire the Subject Property by matching the terms of a third-party offer, the restraint on RRJR's power of alienation would perhaps have been minimal. *See Bortolotti v. Hayden*, 866 N.E.2d 882, 890 (Mass. 2007) (explaining a right of first refusal that allows the holder to match any bona fide offer made by a third party "works a de minimis restraint on

---

regarding the property subject to the right. *See Franklin v. Johnston*, 899 N.W.2d 741, at *8 (Iowa Ct. App. 2017) (unpublished table decision).

the alienation of property"). Of course, in this case, the Right does not include such a provision.

Where a right of first refusal provides no price terms, a dispute may arise as to whether the holder of the right may purchase the property by matching a third-party offer or only after participating in a bidding war with other prospective buyers. That prospect hardly weighs in Clarke's favor. Under the facts of this case, the complete absence of any method for determining price weighs in favor of a finding that the Right is an unreasonable restraint on alienation.

**C. Procedures governing the exercise of the Right**

Clarke contends the Right provides satisfactory procedures governing the exercise of the Right. We disagree because the Right contains no such procedures whatsoever. Comment *f* to section 3.4 of the Restatement states:

> The provisions governing exercise of the right of first refusal are important in determining its impact on alienability. Lack of clarity may cause substantial harm by making it difficult to obtain financing and exposing potential buyers to threats of litigation. Lengthy periods for exercise of rights of first refusal will also substantially affect alienability of the property.

When applying this factor, courts often examine the time period within which the right can be exercised after the owner decides to sell. *See Hare v. McClellan*, 662 A.2d 1242, 1249 (Conn. 1995). Alienation can be substantially restrained when the holder of the right has an extended time to decide whether he will purchase the property. *MS Real Est. Holdings*, 864 N.W.2d at 91. However, when the time allowed for the exercise of the right is reasonable, the right will generally be enforced. *Lorentzen v. Smith*, 5 P.3d 1082, 1086 (N.M. Ct. App. 2000).

Clarke contends, contrary to the Restatement, that "a right of first refusal does not require detailed instructions on how to exercise it to be valid." Clarke argues the seller must only notify the holder of the right of his intent to sell to trigger the right of first refusal. As for the time period in which the holder must exercise the right, Clarke cites *Hobgood v. Pennington* for the proposition that "[w]hen the contract does not include a provision that time is of the essence, the law implies that it is to be done within a reasonable time[.]" 300 S.C. 309, 314, 387 S.E.2d 690, 693 (Ct. App. 1989).

Clarke does not dispute that the Right prescribes no limitation on the time within which he could exercise the Right after being notified of RRJR's desire to

sell. Again, there are no provisions at all delineating the procedural requirements Clarke must follow to exercise the Right. This deficiency supports the conclusion that the Right is an unreasonable restraint on alienation. *See Girard v. Myers*, 694 P.2d 678, 683 (Wash. Ct. App. 1985) ("The preemptive right in this case states no time limit within which the holder must act and sets forth no procedural requirements that the holder must follow to exercise the right. Such a preemptive right permits the holder to frustrate a sale to a third party simply by stalling and then threatening litigation when a controversy develops."); *MS Real Est. Holdings*, 864 N.W.2d at 91-92 ("[W]here the . . . procedure for exercising the right is clear, and the time for exercising the right when it arises is reasonably short, its practical effect on alienation is de minimis.").

Clarke's reliance on *Hobgood* and his suggestion that the law implies a "reasonable time" within which he could exercise the Right are without merit. In *Hobgood*, the court of appeals addressed the issue of whether a real estate purchase and sale agreement expired after the closing date contained in the agreement. 300 S.C. at 313-14, 387 S.E.2d at 692-93. The *Hobgood* court held that because the contract did not include a provision stating time was of the essence, the contract had not expired: "When the contract does not include a provision that time is of the essence, the law implies that it is to be done within a reasonable time; and the failure to incorporate in the memorandum such a statement does not render it insufficient." *Id.* at 314, 387 S.E.2d at 693.

*Hobgood* lends Clarke no support for two reasons. First, *Hobgood* is factually distinguishable because it had nothing to do with a right of first refusal. Second, Clarke misses the point of the Restatement approach by arguing a court can simply imply a reasonable time requirement in which a right of first refusal must be exercised. The whole point of the Restatement is to predetermine a limited time within which a right of first refusal must be exercised to protect the owner's power of alienation. A judicially implied "reasonable time" requirement would do little to protect the owner's power of alienation. Lengthy litigation over what is or is not a reasonable time under the facts of any given case will necessarily restrain alienation.

## Conclusion

The Right does not identify the property it encumbers, contain price provisions, or contain procedures governing the exercise of the Right. We conclude the Right is an unreasonable restraint on alienation. We therefore affirm the court of appeals' holding that the Right is unenforceable.

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE and HEARN, JJ., concur.  FEW, J., concurring in result only in a separate opinion.**

**JUSTICE FEW:** I concur in result. In my opinion, the instrument Clarke contends grants him a right to purchase the property does not grant him any rights at all. The phrase "first right of refusal" is a descriptive term used to summarize an instrument that sets forth in detail the right of one person to purchase property the seller may otherwise choose to sell to a third person. In this case, the instrument simply recites the descriptive term as though the term means anything independent of the detailed rights set forth in a legitimate first right of refusal. An instrument that simply recites the descriptive term without the underlying detailed explanation of the rights conveyed is meaningless. This instrument is meaningless; it is not, therefore, a "first right of refusal." I do not disagree with the Restatement section the majority adopts. However, I would not reach the question whether the instrument is an unreasonable restraint on alienation because I would find the instrument at issue in this case is not a restraint on alienation. The instrument says nothing, does nothing, restrains nothing. I concur in result.