CARL E. BRICKMAN AND ROSEMARY BRICKMAN v. ANTHONY F. CODELLA AND MARGARET CODELLA

No. 8621SC497

(Filed 25 November 1986)

1. **Constitutional Law § 24.7; Process § 9.1— president of foreign corporation— acts on behalf of corporation—personal jurisdiction**

   The acts of defendant as president of a corporation could be imputed to him individually for the purpose of determining whether he had sufficient contacts with North Carolina for the exercise of *in personam* jurisdiction where defendant transacted business in North Carolina as principal agent for the company of which he was president; defendant clearly contemplated commercial benefits to himself from the transaction; and defendant failed to plainly demarcate acts and communications accomplished in his corporate capacity from those done in his individual capacity.

2. **Process § 9.1; Constitutional Law § 24.7— foreign corporation—sufficient minimum contacts**

   A contract to sell and lease back a houseboat and defendant's concomitant guaranty were sufficiently connected with North Carolina to justify the exercise of jurisdiction where defendant sought out plaintiffs and initiated the contacts in North Carolina from which the claim arose; defendant made one telephone call to plaintiffs in North Carolina, two mailings to plaintiffs regarding the business proposal, and mailed four monthly payments on behalf of his company to plaintiffs; the lease contract was consummated by plaintiff's signature in North Carolina and the guaranty, although signed in New York, was essentially a part of the same transaction; a promise to pay the debt of another which is owed to a North Carolina creditor is a contract to be performed in North Carolina; the contract contemplated repetitive activity directed toward North Carolina; North Carolina has a legitimate interest in protecting its residents in the making of contracts with nonresidents who solicit business within North Carolina; there was no evidence that requiring defendant to defend in this forum would place him at a severe disadvantage or subject him to greater inconvenience than requiring plaintiffs to litigate their claim in New York; and there was no indication that material witnesses or evidence were available only in New York.

APPEAL by defendant Anthony Codella from *James M. Long, Judge.* Order entered 18 March 1986 in Superior Court, FORSYTH County. Heard in the Court of Appeals 15 October 1986.

*Pfefferkorn, Pishko & Elliott, P.A., by David C. Pishko, for plaintiff appellee.*

*Wilson and Small, by Christopher J. Small, for defendant appellant.*

BECTON, Judge.

Carl E. Brickman and his wife, Rosemary Brickman, North Carolina residents, brought this action against Anthony and Margaret Codella, residents of New York, to recover on a note under which Anthony Codella guaranteed payment of the indebtedness of Poseidon Industries, Inc. (Poseidon), a New York corporation of which Mr. Codella is president. The defendants filed a motion to dismiss pursuant to N.C. Gen. Stat. Sec. 1A-1, Rule 12(b) (1983) for lack of personal jurisdiction. After considering the pleadings, affidavits, and arguments of counsel, the trial court granted Margaret Codella's motion to dismiss due to the insufficiency of her contacts with the state of North Carolina, but denied the motion of Anthony Codella. Mr. Codella appeals.

We agree with the trial judge that the evidence shows sufficient minimum contacts between Mr. Codella and this state to satisfy the requirements of due process and to justify the assertion of *in personam* jurisdiction against him. Accordingly, we affirm.

I

The uncontradicted allegations of Mr. Brickman's complaint and affidavit establish the following facts. On 9 December 1982 the defendant, Mr. Codella, called Mr. Brickman at his home in Clemmons, North Carolina to propose a business transaction. Mr. Codella is president of Poseidon Industries, Inc., a corporation engaged in the sale of houseboats in New York City. He proposed that Mr. Brickman purchase a houseboat from Poseidon and then lease the houseboat back to Poseidon for use as a display model. The investment would benefit the Brickmans by providing a tax shelter for them. Mr. Brickman apparently expressed some interest in the deal, and the following day Mr. Codella mailed to Mr. Brickman a letter and other materials pertaining to the proposal. Included in the package was a contract for purchase of the houseboat which was already signed by Mr. Codella.

On 15 December 1982 Mr. and Mrs. Brickman purchased a houseboat from Poseidon. The houseboat was to be manufactured in Maryland and then delivered to Poseidon's place of business in New York. The United States Coast Guard documentation pertaining to the houseboat named North Carolina as the vessel's home port.

About 18 December 1982 Mr. Codella mailed a revised lease agreement signed by Mr. Codella to Mr. Brickman in Clemmons, North Carolina. On the same date, Mr. Codella signed and mailed to Mr. Brickman a document personally guaranteeing payment of Poseidon's obligations under the lease if Poseidon defaulted in its lease payments to the Brickmans. Mr. Brickman signed the lease agreement in Clemmons and mailed it back to New York.

Mr. and Mrs. Brickman allege in the Complaint that Poseidon made four rental payments under the lease and then defaulted. They now seek enforcement of the guaranty against Mr. Codella.

The affidavit offered by Mr. Codella in support of his motion to dismiss asserts merely that he is a resident of New York, that

he has never been a resident of North Carolina, that he has never owned any property in North Carolina, and that he has never visited North Carolina to transact business. In his brief, Mr. Codella also asserts that his only contact with North Carolina while acting in his individual capacity was the mailing of the 18 December 1982 letter guaranteeing payment under the lease contract.

## II

In order to determine whether the trial court acquired jurisdiction over Mr. Codella, we apply the two-step analysis set forth in *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977). The first step requires a determination of whether statutory authority exists for the exercise of jurisdiction. The North Carolina "long-arm" statute provides for *in personam* jurisdiction to the full extent permitted by the United States Constitution. *See Dillon; Ash v. Burnham Corp.*, 80 N.C. App. 459, 343 S.E. 2d 2 (1986). The trial judge found, and Mr. Codella does not contest, that N.C. Gen. Stat. Sec. 1-75.4(5) (1983) confers jurisdiction upon the North Carolina courts in this action. Therefore, we proceed directly to the second and critical inquiry: Will the exercise of jurisdiction violate constitutional standards of due process?

Due process of law is offended only when a nonresident defendant lacks sufficient "minimum contacts" with the forum state to make that state's assertion of jurisdiction fair and reasonable. *See International Shoe Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945); *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E. 2d 676 (1974). The existence of adequate contacts is not determined by the application of mechanical rules but rather by careful consideration of the particular facts of each case in order to ascertain what is just under the circumstances. *See Dillon v. Numismatic Funding Corp.; Georgia R.R. Bank & Trust Co. v. Eways*, 46 N.C. App. 466, 265 S.E. 2d 637 (1980). Some factors commonly considered are: (1) quantity of the contacts between the defendant and the forum state, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties. *Marion v. Long*, 72 N.C. App. 585, 325 S.E. 2d 300, *disc. rev. denied*, 313 N.C. 604, 330 S.E. 2d 612 (1985). Above all, it is essential "that there be some act by which the defendant pur-

posefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L.Ed. 2d 1283, 1298, 78 S.Ct. 1228, 1240 (1958) (quoted in *Chadbourn, Inc. v. Katz; J. M. Thompson Co. v. Doral Manufacturing Co.,* 72 N.C. App. 419, 324 S.E. 2d 909, *disc. rev. denied,* 313 N.C. 603, 330 S.E. 2d 611 (1985)).

[1]  Before applying the foregoing standards to the instant case, we must initially determine whether the acts of Mr. Codella as president of Poseidon may be imputed to him individually for the purpose of determining whether he had sufficient contacts with North Carolina. In answering that inquiry we are guided by our Supreme Court's analysis in *United Buying Group, Inc. v. Coleman,* 296 N.C. 510, 251 S.E. 2d 610 (1979). In that case, the defendants — two brothers and nonresidents — guaranteed the debt of a Virginia corporation to a North Carolina creditor. The court concluded that one brother, Morton Coleman, who owned no shares or other interest in the defaulting corporation, was not required to defend in this state because his sole contact with North Carolina was the signing in New York of a note payable here, resulting in the acquisition of "a potential liability to a North Carolina corporation with no attending commercial benefits to himself enforceable in the courts of North Carolina." *Id.* at 517, 251 S.E. 2d at 615. Lawrence Coleman, however, was president and principal shareholder of the corporation whose debt he guaranteed, and he conducted business in North Carolina as principal agent for the corporation. As a result, the court held that his corporate acts could be attributed to him for the purpose of assessing the strength of his contacts with this state.

Like Lawrence Coleman, Anthony Codella has transacted business in North Carolina as principal agent for the company of which he is president. Moreover, the record indicates that Mr. Codella had a significant interest in Poseidon. Carl Brickman's affidavit states, and Mr. Codella has not denied, that Mr. Codella owns Poseidon. Furthermore, the initial letter to Mr. Brickman from Mr. Codella regarding the sale and lease-back transaction reveals that Mr. Codella was launching a new business venture, that he was personally requesting the aid of a family member, that the sale to the Brickmans would be his first houseboat sale, and that he considered this first sale to be critical to the success

of the entire venture. Clearly Mr. Codella contemplated "attending commercial benefits" to himself from the transaction. In addition, he failed to plainly demarcate acts and communications accomplished in his corporate capacity from those done in his individual capacity. Thus we consider all of Mr. Codella's actions pertaining to the sale and lease of the houseboat, from his initial telephone conversation with Mr. Brickman through his mailing of rental payments to the Brickmans, in assessing the adequacy of his contacts with North Carolina.

We acknowledge that the mere guaranty by a nonresident of a debt owed to a North Carolina corporation does not *per se* constitute a sufficient minimal contact upon which this state may assert personal jurisdiction. *See United Buying Group, Inc. v. Coleman*. However, as discussed hereafter, the circumstances surrounding Mr. Codella's guaranty of Poseidon's obligations lead us to conclude that his contacts with North Carolina justify the assertion of jurisdiction.

[2] As to the *quantity* of contacts between Mr. Codella and North Carolina, the record shows that Mr. Codella made a minimum of one phone call and two mailings to Mr. Brickman regarding his business proposal. Furthermore, he mailed four monthly payments due under the lease to the Brickmans on behalf of Poseidon.

Admittedly, the contract between Mr. Codella and Mr. Brickman was an isolated business transaction and there is no evidence that Mr. Codella conducted any other business in North Carolina. However, not only the quantity but also the *nature* of Mr. Codella's contacts with the state must be considered. The absence of actual physical contacts with the state is not of controlling weight but is merely one factor to consider. *Burger King v. Rudzewicz*, --- U.S. ---, 85 L.Ed. 2d 528, 105 S.Ct. 2174 (1985); *Ciba-Geigy Corp. v. Barnett*, 76 N.C. App. 605, 334 S.E. 2d 91 (1985). A single contract made in North Carolina can be sufficient to subject a nonresident defendant to suit here. *See McGee v. International Life Insurance Co.*, 355 U.S. 220, 2 L.Ed. 2d 223, 78 S.Ct. 199 (1957); *Telerent Leasing Corp. v. Equity Associates, Inc.*, 36 N.C. App. 713, 245 S.E. 2d 229 (1978). The lease contract was consummated by Mr. Brickman's signature in North Carolina. The contract was thus made here, and the guaranty, although signed

in New York, was essentially a part of the same transaction. In addition, a promise to pay the debt of another which is owed to a North Carolina creditor is a contract to be *performed* in North Carolina. *First Citizens Bank and Trust Co. v. McDaniel*, 18 N.C. App. 644, 197 S.E. 2d 556 (1973), *overruled on other grounds, United Buying Group v. Coleman. See also Koppers Co. v. Kaiser Aluminum and Chemical Corp.*, 9 N.C. App. 118, 175 S.E. 2d 761 (1970) (in absence of agreement to contrary, debt is payable where creditor resides).

As a result of the agreement, Mr. Codella was allegedly indebted to Mr. Brickman for nearly $40,000, and the contract contemplated repetitive activity (the making of lease payments) directed toward North Carolina for a period of four years. Furthermore, North Carolina law would govern should any dispute arise regarding the lease, and Mr. Codella could clearly have enforced his "attending commercial benefits" under the agreement in the courts of North Carolina. Finally, the threshold for sufficiency of contacts is lowered when the cause of action derives directly from those contacts. *See Ash v. Burnham.* Taking all of these factors into consideration, the contract to sell and lease back the houseboat and Mr. Codella's concomitant guaranty were sufficiently connected to North Carolina to justify the exercise of jurisdiction in this suit which arises directly out of those contracts.

Equally significant, Mr. Codella *sought out* Mr. Brickman and initiated the contacts with North Carolina from which this claim arises. In *J. M. Thompson Co. v. Doral Manufacturing Co.* this Court stated:

> What contacts with the forum state constitute minimum contacts for jurisdictional purposes is ultimately a fairness determination: the defendant's conduct and connection with the forum state must be such that it "reasonably anticipate[s] being haled into court there." (Citation omitted.)

*Id.* at 425, 324 S.E. 2d at 913. According to the United States Supreme Court, due process requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King v. Rudzewicz*, --- U.S. ---, 85 L.Ed. 2d at 540, 105 S.Ct. at --- (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 53 L.Ed. 2d 683, 97 S.Ct. 2569 (1977)

(Stevens, J., concurring)). The " 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum (citation omitted), and the litigation results from alleged injuries that 'arise out of or relate to' those activities (citation omitted)." *Id.* at ---, 85 L.Ed. 2d at 541, 105 S.Ct. at ---. Mr. Codella's contacts with North Carolina were not random, casual, or fortuitous, but were "purposefully directed" toward Mr. Brickman in order to obtain his financial assistance with a new business venture whereby Mr. Codella sought personal commercial benefit. Thus, he should reasonably have anticipated that he might be required to litigate in North Carolina any suit arising from his solicitation of business here.

Finally, we consider the factors of convenience to the parties and the state's interest. Without question, North Carolina has a legitimate interest in protecting its residents in the making of contracts with nonresidents who solicit business within its borders. Moreover, there is no evidence that requiring Mr. Codella to defend in this forum will place him at a severe disadvantage or subject him to greater inconvenience than the inconvenience to the Brickmans of litigating their claim in New York. Nor is there any indication that material witnesses or evidence are available only in New York.

When an individual "who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King v. Rudzewicz*, --- U.S. at ---, 85 L.Ed. 2d at 544, 105 S.Ct. at ---. This Mr. Codella has failed to do.

For the foregoing reasons, we conclude that it is just and reasonable to subject Mr. Codella to the jurisdiction of North Carolina for the litigation of his obligations to Mr. and Mrs. Brickman pursuant to his guaranty.

Affirmed.

Judges WEBB and EAGLES concur.