486 S.E.2d 766

**PYA/MONARCH, INC., Respondent,**

v.

**SOWELL'S MEATS & SERVICES, INC. and Jimmie W. Sowell, Appellant.**

No. 2683.

Court of Appeals of South Carolina.

Submitted May 6, 1997

Decided June 16, 1997.

470

Kenneth E. Sowell, Simpsonville, for appellant.

Ray R. Williams, Jr. and Craig H. Allen, both of Williams & Henry, Greenville, for respondent.

CURETON, Judge.

Jimmie W. Sowell (Sowell), and Sowell's Meats & Services, Inc. (SMS), appeal from the trial judge's order according full faith and credit in South Carolina to a North Carolina default judgment in favor of PYA/Monarch, Inc. (PYA). We reverse.[1]

## I. FACTS

Sowell is president of SMS, which cuts and packages meat for retail sale only in South Carolina. PYA is a large multi-state wholesaler which distributes foodstuffs to industrial or business clients. PYA and its predecessors supplied "box meat" to SMS and its predecessors for over twenty years. In August 1994, Sowell executed a PYA credit application on behalf of SMS, and he also personally guaranteed the account with PYA.

Evidently, PYA initially solicited SMS's business through its South Carolina sales agents, and Sowell testified he was not aware of any time when either he or his father solicited PYA for supplies. Generally, Sowell would order meat from PYA's South Carolina agent when the agent visited SMS's place of business. The PYA agent did testify that Sowell may have telephoned some orders directly to the Charlotte office by use of an 800 number, but Sowell testified all orders took place at SMS. Two to four times a week, PYA's trucks delivered meat from the plant in Charlotte, N.C., to SMS's location in Rock Hill, S.C.

In the transactions since at least June of 1994, PYA's deliveries were accompanied by itemized invoices. Although the invoices, which listed PYA's Charlotte address at the top, provided that the bill had to be paid within seven days, SMS's account was always 30 to 45 days past due. Sowell paid on the account by physically delivering a check to a PYA agent who had stopped by the Rock Hill store. These checks were frequently returned for insufficient funds. After PYA's bank

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

returned the bounced checks, PYA's agent would visit Sowell, who would in turn give the agent a cashier's check or cash to cover the amount. For approximately 22 years, PYA allowed SMS to "roll" a delinquent balance, which generally ranged from $20,000 to $40,000. Eventually, PYA's credit manager tired of Sowell's account, but the parties could not agree on an arrangement to bring the account current. At that point, PYA would not allow its agents to call on Sowell, and Sowell mailed a $1000 check to PYA in Charlotte. PYA returned this check to Sowell.

PYA filed a collection action in North Carolina on the account and personal guarantee. Sowell defaulted, and PYA sought to enter the judgment in South Carolina. After a hearing, the trial judge ruled that North Carolina properly exercised personal jurisdiction over Sowell and SMS, and ordered the default judgment entered in South Carolina. Sowell and SMS appeal.

## II. ANALYSIS

Sowell and SMS assert (1) that South Carolina law should be used to determine jurisdiction because the credit application and personal guarantee state that South Carolina law governs the parties' agreement, and (2) that Sowell and SMS did not have sufficient contacts with North Carolina in order for that state's courts to have personal jurisdiction over them. We disagree with the first argument, but agree with the second.

 The Uniform Enforcement of Foreign Judgments Act allows a judgment debtor to file a motion for relief from, or a notice of defense to, a foreign judgment "on any . . . ground for which relief from a judgment of this State is allowed." S.C.Code Ann. § 15–35–940 (Supp.1996). Lack of personal jurisdiction is one such ground. *McDaniel v. United States Fidelity & Guar. Co.*, 324 S.C. 639, 478 S.E.2d 868 (Ct.App.1996) (discussing Rule 60(b)(4), SCRCP). The validity and effect of a foreign judgment must be determined by the laws of the state that rendered the judgment. *Loyd and Ring's Wholesale Nursery, Inc. v. Long & Woodley Landscaping and Garden Ctr., Inc.*, 315 S.C. 88, 431 S.E.2d 632 (Ct.App.1993) (citing *Hamilton v. Patterson*, 236 S.C. 487, 115 S.E.2d 68 (1960)). Thus, the choice of substantive law and the

determination of personal jurisdiction are two different issues connected only by the fact that the parties' agreement as to the former may be persuasive in deciding the latter. *Cf. Cherry Bekaert & Holland v. Brown,* 99 N.C.App. 626, 394 S.E.2d 651 (1990) (noting that in a breach of contract case, one relevant factor to personal jurisdiction is the choice of law provision in the contract); *Hargett v. Reed,* 95 N.C.App. 292, 382 S.E.2d 791, 793 (1989) (noting that "choice of law is a separate inquiry from personal jurisdiction and the two should not be confused"). *Accord Springmasters, Inc. v. D & M Mfg.,* 303 S.C. 528, 534, 402 S.E.2d 192, 195 (Ct.App.1991) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In such a case as this, we must decide in view of all the facts whether North Carolina properly exercised personal jurisdiction pursuant to North Carolina law.

■ The test for exercise of personal jurisdiction is two-pronged. First, the transaction must fall within North Carolina's long-arm statute. *Tom Togs, Inc. v. Ben Elias Indus.,* 318 N.C. 361, 348 S.E.2d 782 (1986). North Carolina's personal jurisdiction statutes are construed in favor of jurisdiction to the full limits of due process. *Cf. Dataflow Cos. v. Hutto,* 114 N.C.App. 209, 441 S.E.2d 580 (1994). These statutes provide for personal jurisdiction if the action "[r]elates to goods, documents of title, or other things of value shipped from [North Carolina] by the plaintiff to the defendant on his order or direction." N.C.Gen.Stat. § 1–75.4(5)(d) (1996). PYA's action against Sowell and SMS triggers the statute.

■ Second, exercise of personal jurisdiction must satisfy due process considerations through the existence of "minimum contacts" between the defendant and the forum. The maintenance of the suit must not offend traditional notions of fair play and substantial justice, and the defendant must have purposefully availed himself of the privilege of conducting activities within the forum state. Unilateral activity of others within the forum state will not suffice to exercise jurisdiction over a nonresident defendant, and the defendant's relationship must be such that he should reasonably expect to face suit in the forum state. *Togs,* 348 S.E.2d at 786 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct.

1228, 2 L.Ed.2d 1283 (1958); and *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

 This case involves the exercise of "specific" jurisdiction, because the controversy arises out of Sowell's contacts with North Carolina. *See Togs,* 348 S.E.2d at 786. The inquiry should focus on the relationship among the defendant, the forum state, and the cause of action. *Id.* Relevant factors for determination of "minimum contacts" include "the quality and quantity of contacts, the source and connection of the cause of action with those contacts, convenience to the parties and the interest of the forum state." *Dataflow,* 441 S.E.2d at 582.

In the many published opinions applying these rules, North Carolina courts have been remarkably liberal in finding their state's courts had jurisdiction whenever the "defendant voluntarily entered into a contract with a substantial connection" to North Carolina. *See, e.g. Togs,* 348 S.E.2d at 788. For example, in *Togs,* a nonresident buyer forwarded an order for shirts through an independent broker to a North Carolina manufacturer. The buyer wrote on the order, sent labels to be sewn into the shirts, and then after delivery returned the shirts to North Carolina allegedly in damaged condition. The court noted the realities of modern business communication, and found North Carolina could properly exercise jurisdiction over the buyer. *Id.* at 784–88. In *Liberty Finance Co. v. North Augusta Computer Store, Inc.,* 100 N.C.App. 279, 395 S.E.2d 709 (1990), the South Carolina buyer executed and mailed a credit application which a North Carolina vendor had sent without solicitation. Routinely, the buyer executed unsolicited credit applications from vendors in case unexpected sales demands necessitated use of new suppliers. In response to an unsolicited phone call from the vendor announcing credit approval, the buyer ordered computer components for which it later refused to pay due to alleged malfunction. The *Liberty* court upheld North Carolina jurisdiction over the buyer because of the credit application, the acceptance of the order in North Carolina, and the shipping of the goods from North Carolina. *Id.,* 395 S.E.2d at 712. In *Collector Cars of Nags Head, Inc., v. G.C.S. Elecs.,* 82 N.C.App. 579, 347 S.E.2d 74 (1986), the North Carolina plaintiff saw a national advertisement and called the California seller to order the product. The seller mailed to North Carolina a sales contract, which the

plaintiff executed and returned with a check for payment. The buyer sued when the seller cashed the check but allegedly did not deliver on time, and the *Collector Cars* court upheld jurisdiction by finding that the circumstances "manifest a willingness by [the seller] to conduct business in North Carolina." *Id.*, 347 S.E.2d at 76. In *Dataflow*, the court upheld jurisdiction over a nonresident buyer who purchased a computer system from the North Carolina seller. The court noted that the buyer entered into a contract and mailed payment to North Carolina, the seller shipped the equipment from North Carolina, the seller designed the system in North Carolina and sent representatives to help with installation, and the buyer ordered further supplies from the seller. *Dataflow*, 441 S.E.2d at 582–83.

On the other hand, one case held that North Carolina courts did not have personal jurisdiction over a South Carolina (and, in fact, a York County) defendant who signed insurance contracts obligating him to send payment to the insurer's offices in Charlotte. *Cameron–Brown Co. v. Daves*, 83 N.C.App. 281, 350 S.E.2d 111 (1986). The court noted that signing the contract was insufficient because all elements of the defendant's performance were to occur outside of North Carolina, and stated that mailing payments to Charlotte was insufficient contact as well. The court stressed that the insurer initiated the relationship with a defendant who had no business activities in North Carolina. *Id.*

In the present case, many of the facts weigh in favor of Sowell and SMS's argument that North Carolina does not have personal jurisdiction over them. SMS only does business, and evidently is only licensed to do business, in South Carolina. PYA initially sought out SMS's predecessor as a customer. Most if not all orders, deliveries, and payments took place within South Carolina, during PYA's agent's visits to SMS's place of business. The contract between the parties called for application of South Carolina law.

On the other hand, the trial judge found, and the record reflects, that SMS's place of business is as close to the courthouse in Mecklenburg County, N.C., as it is to the courthouse in York County, S.C. It does not seem inconvenient for Sowell and SMS to litigate in Mecklenburg County. Although the choice of law in the contract would at first glance

make jurisdiction seem "better" in South Carolina, personal jurisdiction and choice of law are separate issues, and interstate actors often have minimum contacts with more than one forum.

■ Thus, our inquiry focuses on whether Sowell and SMS entered into contracts which, in either formation or performance, had a substantial connection to North Carolina. First, we must address the individual meat purchase contracts and the course of dealing between the parties for many years. The record reflects that SMS's individual offers to purchase meat were made in South Carolina. Unlike *Liberty,* or other cases where the offer was accepted in North Carolina through shipment by common carrier from that state, here acceptance occurred *in South Carolina* by PYA's delivery of the goods with its own trucks. *See* S.C.Code Ann. § 36-2-206 official cmt. 2 and S.C. reporter's cmts. (1976); N.C.Gen.Stat. § 25-2-206 official cmt. 2 (1995). *Cf. Williams v. Institute for Computational Studies,* 85 N.C.App. 421, 355 S.E.2d 177 (1987) (noting that a contract is made in North Carolina if the last act necessary to make a binding obligation is performed within North Carolina). The only performance remaining was SMS's payment, which also took place in South Carolina. Even when SMS bounced checks, PYA's agent travelled to SMS's place of business to resolve the matter. Although the trial judge found SMS knew the goods came from Charlotte, and although the parties dealt with each other for many years, this course of dealing seems arranged so that PYA would deal with SMS exclusively in South Carolina. All essential contractual aspects of the sales are linked to South Carolina. Thus, insufficient contacts are present here to justify North Carolina's exercise of personal jurisdiction.

■ However, Sowell also signed the credit application for SMS, as well as the personal guarantee. North Carolina courts have held that obligating oneself in writing to a North Carolina creditor is often sufficient contact. *See Wohlfahrt v. Schneider,* 66 N.C.App. 691, 311 S.E.2d 686 (1984); *Liberty,* 395 S.E.2d at 712-13. *But see Brickman v. Codella,* 83 N.C.App. 377, 350 S.E.2d 164 (1986) (stating that a nonresident's mere guaranty of a debt owed to a North Carolina creditor is not *per se* sufficient contact); *Cameron–Brown,* 350 S.E.2d at 114-15 (noting that the nonresident debtor's other

contacts still must be examined). However, the contracts between SMS and PYA called for payment to be made according to the invoices. The invoices, which listed PYA's Charlotte address, provided that payment was due within seven days, but the record does not reflect that the invoices expressly said where or how. The undisputed course of dealing between the parties was that payment was made to PYA's agent when the agent visited SMS's place of business in South Carolina. PYA refused the only check SMS ever mailed to North Carolina. Thus, unlike *Liberty* and *Wohlfahrt*, the payments on the debt were made in South Carolina, not North Carolina, so those cases are distinguishable. Moreover, in a breach of contract case, one relevant factor to the exercise of personal jurisdiction is the parties' choice of South Carolina law in the contract. *See Cherry Bekaert,* 99 N.C.App. 626, 394 S.E.2d 651. We thus hold the credit application and guarantee do not provide sufficient contacts.

## III. CONCLUSION

We hold that insufficient minimum contacts existed for North Carolina to exercise personal jurisdiction over Sowell and SMS. We reverse the trial court's order according full faith and credit to the North Carolina default judgment in favor of PYA.

**REVERSED.**

HEARN and STILWELL, JJ., concur.