517 S.E.2d 235

**ABBA EQUIPMENT, INC., Appellant,**

v.

**Ralph THOMASON, Respondent.**

No. 2983.

Court of Appeals of South Carolina.

Heard March 9, 1999.

Decided May 3, 1999.

Rehearing Denied July 24, 1999.

478

James C. Parham, Jr., and Gregory J. English, both of Wyche, Burgess, Freeman & Parham, of Greenville, for appellant.

O.W. Bannister, Jr., and James W. Bannister, both of Hill, Wyatt & Bannister, of Greenville, for respondent.

HUFF, Judge:

Abba Equipment, Inc. attempted to file in South Carolina a Florida judgment against Ralph Thomason, pursuant to the Uniform Enforcement of Judgments Act (UEFJA), S.C.Code Ann. § 15-35-900 *et seq.* (Supp.1998).[1] Thomason objected to the filing. Abba moved to enforce the judgment. The trial judge denied the motion. Abba appeals. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Abba obtained a default judgment against Thomason in Florida for $31,015.95 with interest accruing at 12%. The order was dated April 15, 1983, and recorded on May 6, 1983.[2] On December 23, 1996, Abba filed the Florida judgment and supporting affidavit with the Greenville, South Carolina, Clerk of Court. Thomason objected to the filing, arguing he had resided in South Carolina since 1984, and the ten year statute of limitations, S.C. Code Ann. § 15-3-600 (1976), therefore barred prosecution of the action. Abba then moved to enforce the foreign judgment. In a supporting affidavit, Abba's president asserted it did not discover that Thomason had moved to South Carolina until May or June of 1996 and that it did not know where Thomason was from the time it obtained its judgment until the time it discovered Thomason resided in South Carolina.

Thomason did not offer any affidavits to support his objection to the filing of the foreign judgment. At the hearing, however, the trial judge allowed Thomason and his nephew, Bo Barrett, to testify as to Thomason's residency in this state. Thomason testified that he moved to Hilton Head, South Carolina, on December 5, 1984. He stated he obtained a South Carolina driver's license in 1984 or 1985. He also

---

1. Abba has assigned its interest in the Florida judgment to Eugenia T. Barrett, Thomason's sister.

2. Under Florida law, the judgment remains valid and enforceable for 20 years from the date of entry.

asserted his South Carolina and federal tax returns showed his South Carolina address beginning in 1985.

Relying on *Payne v. Claffy*, 281 S.C. 385, 315 S.E.2d 814 (Ct.App.1984), the trial judge held the ten year statute of limitations of § 15-3-600 applied to an action to enforce a foreign judgment. He held the Legislature did not abrogate the application of this statute of limitations to the enforcement of foreign judgments by enacting the Uniform Enforcement of Foreign Judgments Act. Accordingly, the ten year statute of limitations applied to Abba's action and its motion to enforce the judgment was denied.

## ISSUES

Abba raises three issues on appeal. It contends the trial judge erred in (1) applying the limitations period of § 15-3-600 to the UEFJA; (2) failing to apply the discovery rule to the limitations period of § 15-3-600; and (3) allowing live testimony to be presented in opposition of Abba's motion to enforce the foreign judgment.

## LAW/ANALYSIS

1. Application of § 15-3-600 to the UEFJA

■ Abba argues the trial judge erred in applying the limitations period of S.C.Code Ann. § 15-3-600 (1976) to the UEFJA, which contains no limitations period. We disagree.

Section 15-3-600 is a catch-all statute of limitations which provides, "An action for relief not provided for in this chapter must be commenced within ten years after the cause of action shall have accrued." S.C.Code Ann. § 15-3-600 (1976). Prior to the enactment of the UEFJA, this court held that, in an action on a foreign judgment, the statute of limitations to be applied is ordinarily the statute of the state where the action is brought and not that of the jurisdiction in which the judgment was obtained. *Payne*, at 386-387, 315 S.E.2d at 815. We found, although no statute expressly limits the time within which actions on foreign judgments must be brought, § 15-3-600 indirectly applies and can serve to bar prosecution of foreign judgments. *Id.* Pursuant to S.C.Code Ann. § 15-3-30 (1976), this statute of limitations is tolled while the judg-

ment debtor resides outside of South Carolina. Thus, the limitation period does not begin to run until the judgment debtor moves to South Carolina and the courts of this state become empowered to adjudicate between the parties upon the particular cause of action. *Id.* In *Payne,* because the judgment debtor had resided in South Carolina less than ten years and the judgment remained enforceable in Virginia, the action on the Virginia judgment was not barred in South Carolina.

*Payne* unequivocally mandates application of the ten year statute of limitations to enforcement of a foreign judgment at common law. Abba contends, however, because *Payne* was decided some nine years prior to adoption of the UEFJA, and because the Act itself contains no limitations period, the statute of limitations pursuant to *Payne* has no application under the Act. We disagree.

We note that jurisdictions are divided on the issue of whether a state's statute of limitations for enforcing foreign judgment applies to proceedings under the UEFJA. *See Fairbanks v. Large,* 957 S.W.2d 307, 308 (Ky.Ct.App.1997) (citing Sara L. Johnston, Annotation, *Validity, Construction, and Application of Uniform Enforcement of Foreign Judgments Act,* 31 A.L.R.4th 706 (1984 & Supp.1997)). We are persuaded by cases from jurisdictions which apply their statute of limitations for enforcement of foreign judgments under the UEFJA to domesticate a foreign judgment.

In *Fairbanks,* the Kentucky Court of Appeals addressed the issue of whether the statute of limitations which applied in the enforcement of foreign judgment actions brought under common law also applied to enforcement brought under the subsequently adopted UEFJA. The court found no logical distinction between the two enforcement proceedings and held an action by a judgment creditor under the UEFJA was subject to Kentucky's statute of limitations on foreign judgments. In *Lawrence Systems, Inc. v. Superior Feeders, Inc.,* 880 S.W.2d 203 (Tex.Ct.App.1994), the Texas Court of Appeals held its statute of limitations for enforcing foreign judgments applied equally to proceedings under its UEFJA as it did to common law actions for the enforcement of foreign judgments. The court found, "[f]or limitation purposes, there is no logical

difference between the two enforcement proceedings." *Id.* at 208.

██ The purpose of the UEFJA is to provide a simpler, more expedient procedure to enforce foreign judgments; it is not to endow foreign creditors with substantive rights not otherwise available in the forum state. *Fairbanks, supra,* at 309. There is nothing in the UEFJA to suggest it is designed to circumvent the established statute of limitations for enforcing foreign judgments. *Id.* While the procedure may be easier and less costly to pursue than that of a common law action, it is nevertheless an enforcement procedure, the goal of which is identical to a suit to enforce judgment. *Id.* Thus, there is no logical basis for imposing two different periods of limitation. *Id.* at 309–310.

██ Our Legislature enacted the UEFJA in 1993, but did not provide a limitations period for filing foreign judgments pursuant to the act. S.C.Code Ann. § 15–35–900 *et seq.* (Supp.1998). The Legislature, however, is presumed to enact legislation with reference to existing law, and there is a strong presumption it does not intend, by statute, to change common law rules. *Hoogenboom v. City of Beaufort,* 315 S.C. 306, 318 n. 5, 433 S.E.2d 875, 884 n. 5 (Ct.App.1993). Further, a statute is not to be construed as in derogation of common law rights if another interpretation is reasonable. *Id.* *See also* *O'Laughlin v. Windham,* 330 S.C. 379, 498 S.E.2d 689 (Ct. App.1998) (strong presumption exists that General Assembly does not intend to supplant common law principles when enacting legislation). We therefore conclude enactment of the UEFJA did not abrogate the common law rule of *Payne* that the ten year statute of limitations under § 15–3–600 applies to actions to enforce foreign judgments.

We find that, absent some specific limitations period for enforcement under the UEFJA, the catch-all limitation period of § 15–3–600 applies to the time in which a foreign judgment must be filed pursuant to the UEFJA, just as it does to an action to enforce a foreign judgment under common law. As the Kentucky Court of Appeals explained, "[W]e believe it would be anomalous for the Legislature to endow foreign judgment creditors with a greater period to collect from debtors in [this state] than creditors with domestic judg-

ments." *Fairbanks v. Large*, 957 S.W.2d 307, 310 (Ky.Ct.App. 1997).[3]

## 2. Discovery Rule

■ Abba argues the trial judge erred when he refused to apply the discovery rule to the limitations period set forth in § 15–3–600. We disagree.

The legislature has imposed the discovery rule on several causes of action. *See* §§ 15–3–535 (Supp.1998) (extending discovery rule to action governed by 15–3–530(5), actions for any injury to the person or rights of another, not arising on contract); 15–3–530(7) (Supp.1998) (fraud); 15–3–530(9) (Supp. 1998) (action against directors and stockholders of banks); 15–3–545 (Supp.1998) (medical malpractice action). The rule has been judicially applied to other causes of action. *See Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645 (1996) (holding discovery rule is applicable to action for trespass or damage to real property); *Santee Portland Cement Co. v. Daniel Int'l Corp.*, 299 S.C. 269, 384 S.E.2d 693 (1989), overruled on other grounds by *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Division of Unidynamics Corp.*, 319 S.C. 556, 462 S.E.2d 858 (1995) (holding the discovery rule applies to breach of contract actions); *Mills v. Killian*, 273 S.C. 66, 254 S.E.2d 556 (1979) (holding the discovery rule applies to professional negligence causes of action). While the court in *Santee*, *supra*, judicially applied the discovery rule to contract actions, it did not adopt the rule for all causes of action. *Matthews v. City of Greenwood*, 305 S.C. 267, 269 n. 1, 407 S.E.2d 668, 669 n. 1 (Ct.App.1991). *See also Jones v. City of Folly Beach*, 326 S.C. 360, 483 S.E.2d 770 (Ct.App.1997) (wherein this court refused to extend discovery rule to actions for libel and slander).

Abba argues that pursuant to *Mills, supra*, the discovery rule applies to actions subjected to the § 15–3–600 statute of limitations. We disagree. In *Mills*, the supreme court held the discovery rule applied in a cross-claim for professional negligence to prevent the action from being barred by either

---

**3.** *See Commercial Credit Loans, Inc. v. Riddle,* 334 S.C. 176, 512 S.E.2d 123 (1999) (an original South Carolina judgment is extinguished ten years from the date of entry).

the six year statute of limitations of the former § 15–3–530 or the ten year statute of limitations of section 15–3–600. We find the supreme court's application of the discovery rule in *Mills* is limited to actions for professional negligence and does not automatically extend to every action falling within the catch-all limitations period of § 15–3–600. Accordingly, we must decide the novel issue of whether the discovery rule applies in actions pursuant to the UEFJA.

 Under the discovery rule, the statutory period of limitations begins to run when a person could or should have known, through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto. *Burgess v. American Cancer Society*, 300 S.C. 182, 386 S.E.2d 798 (Ct.App.1989). The rule requires an injured party to act promptly when the facts and circumstances of the injury would place a reasonable person on notice that a claim against another party might exist. *Dean, supra* at 363–364, 468 S.E.2d at 647. The discovery rule has evolved as a means of mitigating harsh and unjust results from a rigid application of the statute of limitations where an injury or cause is not immediately evident to the plaintiff. The rule protects plaintiffs' interests in prosecuting actions and pursuing their rights where circumstances prevent them from knowing they have been harmed. *Santee, supra* at 271, 384 S.E.2d at 694. In some situations, ". . . the accrual upon discovery rule represents the more equitable and rational view." *Id.* at 272, 384 S.E.2d at 695.

We agree with the trial judge that the concerns necessitating the application of the discovery rule in other actions are absent from an action to enforce a foreign judgment. A judgment creditor is on notice that it has a claim against the judgment debtor once the foreign judgment is final. Such circumstances do not prevent the judgment creditor from knowing he has been harmed, and there are no harsh or unjust results militating against rigid application of the statute of limitations. Accordingly, we find the trial judge did not err in refusing to apply the discovery rule. We hold the ten year limitations period of § 15–3–600, for enforcement of Abba's foreign judgment under the UEFJA, began to run when

Thomason became a resident of South Carolina, not when Abba discovered Thomason was a South Carolina resident.

### 3. Live Testimony

■ Abba argues the trial judge erred in allowing Thomason, with no prior notice to Abba, to provide live testimony to oppose Abba's motion to enforce the Florida judgment in violation of Rule 6(d), SCRCP. We find no reversible error.

The UEFJA provides the South Carolina Rules of Civil Procedure apply to a hearing on a foreign judgment creditor's motion for enforcement under the Act. S.C.Code Ann. § 15–35–940(B) (Supp.1998). Rule 6(d), SCRCP, provides that when a motion is supported by affidavit, "additional or opposing affidavits may be served not later than two days before the hearing, unless the court permits them to be served at some other time."

The record on appeal does not provide the basis for Abba's objections to Thomason's live testimony or any argument as to how it was prejudiced by the admission of the testimony. Rather, it contains only Abba's assertions that allowing Thomason to supplement the record with witnesses was improper and Thomason should not be allowed to call an additional witness, Bo Barrett. The record is completely devoid of any argument by Abba that the live testimony did not comply with Rule 6(d), SCRCP.

■ An appellant must make a specific objection to the admission of evidence to preserve the issue for appeal. *McKissick v. J.F. Cleckley & Co.*, 325 S.C. 327, 479 S.E.2d 67 (Ct.App.1996). The same ground argued on appeal must have been argued to the trial judge. *Id.* An appellate court may not address an issue that is not preserved. *Hendrix v. Eastern Distribution, Inc.*, 320 S.C. 218, 464 S.E.2d 112 (1995). Additionally, as the appellant, Abba bears the burden of providing an adequate record for this court to conduct a proper review. *D & D Leasing Co. of South Carolina, Inc. v. Gentry*, 298 S.C. 342, 380 S.E.2d 823 (1989); *Windham v. Honeycutt*, 290 S.C. 60, 348 S.E.2d 185 (Ct.App.1986). Because this issue has not been properly preserved, we cannot address it on appeal.

For the foregoing reasons, the order below is
**AFFIRMED.**

STILWELL, J., concurring.

HEARN, J., dissenting in a separate opinion.

HEARN, Judge:

Respectfully, I dissent. While I recognize the holding of *Payne v. Claffy,* 281 S.C. 385, 315 S.E.2d 814 (Ct.App.1984), that the general statute of limitations contained in S.C.Code section 15–3–600 indirectly applies to an action on a foreign judgment, I would hold it does not apply to a proceeding under the Uniform Enforcement of Foreign Judgments Act (UEFJA).

The UEFJA establishes a summary procedure for enrolling a foreign judgment in this state. The registration procedure under the Act is not an action like the common-law proceeding to enforce a foreign judgment in *Payne.*[1] *See Hunter Technology, Inc. v. Scott,* 701 P.2d 645, 646 (Colo.Ct.App.1985) (" 'The [Uniform] Act does not involve the institution of an action to enforce the judgment; it requires, to give the foreign judgment immediate legally enforceable consequences, only that it be filed in accordance with its provisions.' " (quoting *Producers Grain Corp. v. Carroll,* 546 P.2d 285, 287 (Okla.Ct. App.1976))); *Wright v. Trust Co. Bank,* 219 Ga.App. 551, 466 S.E.2d 74, 75 (1995) ("The uniform law provides a summary procedure for endowing a filed foreign judgment with the same effect as a judgment of the court in which it is filed. It is not a new action.…" (citation omitted)); *Hill v. Value Recovery Group, L.P.,* 964 P.2d 1256, 1259 (Wyo.1998) ("Filing a foreign judgment under the [UEFJA] does not involve a court proceeding and, therefore, is not a civil action.…").

The majority relies on two recent opinions from other jurisdictions. Both Texas and Kentucky have applied their enforcement of foreign judgment statutes of limitations to registering foreign judgments in those states. In the Texas

---

1. We use the term "registered" to denote those foreign judgments which are filed in accordance with the UEFJA. The term "domesticated" refers to the common-law procedure of bringing an action upon the foreign judgment.

case, the language of the statute of limitations on which the Texas Court of Appeals relies is very different from that governing our decisions. Texas has had a statute for over seventy-five years that specifically limits actions on foreign judgments against domestic debtors to ten years. *See Lawrence Sys., Inc. v. Superior Feeders, Inc.*, 880 S.W.2d 203, 206 (Tex.App.1994). This Texas statute applies to any "action." Tex.Civ.Prac.Code Ann. § 16.066(b) (West 1986). The Texas court noted that the UEFJA required filing of the foreign judgment and giving notice to the debtor. Because filing and notice are essential elements in an "action" for enforcement, the court found its statute of limitations broad enough to apply to "actions" under the UEFJA. *Lawrence Systems*, 880 S.W.2d at 208.

By contrast, our statute of limitations at issue, Code section 15-3-600, applies only to a "cause of action." In my view, this specifically limits its applicability to causes of action, a term that contemplates a proceeding between adverse parties, not a unilateral act such as registration under the UEFJA.

Admittedly, some jurisdictions have made facially appealing arguments to the effect that where the end result is the same, the means should be treated the same. *See Fairbanks v. Large*, 957 S.W.2d 307, 309 (Ky.Ct.App.1997) ("While the [UEFJA] procedure may be easier and less costly to pursue, it is nevertheless an enforcement procedure, the goal of which is identical to a suit to enforce a judgment."). However, I do not find these rationales persuasive because the legal landscape of enforcing foreign judgments has changed with the passage of the UEFJA.

Under the protections of full faith and credit, foreign judgments that are valid, final, unsatisfied, and uncontested may be registered under our UEFJA. S.C.Code Ann. § 15–35–920(A) (Supp.1998). Once the judgment is registered properly, it must be docketed and indexed like a South Carolina judgment. S.C.Code Ann. § 15–35–920(B) (Supp.1998). After the foreign judgment has become a South Carolina judgment under the UEFJA, the judgment debtor may then challenge the now South Carolina judgment on "any ... ground for which relief from a judgment of this state is allowed." S.C.Code Ann. § 15–35–940 (Supp.1998). Although at that

point a statute limiting the enforcement period may be implicated, a general statute of limitations should not be applied.

However, those defenses affecting South Carolina's ability to afford a foreign judgment full faith and credit through registration would still be allowed. For example, lack of personal jurisdiction to the original judgment is a defense to proper registration of a foreign judgment in South Carolina. *See PYA/Monarch, Inc. v. Sowell's Meats & Servs., Inc.*, 327 S.C. 469, 478, 486 S.E.2d 766, 771 (Ct.App.1997) (reversing the trial court's accord of full faith and credit to a North Carolina judgment because the judgment debtor had insufficient minimum contacts with North Carolina to support the judgment; because the initial judgment was void, there was no judgment to register in South Carolina)..

Moreover, a judgment registered under the UEFJA would also be subject to South Carolina Code section 15–39–30. *See Commercial Credit Loans, Inc. v. Riddle*, 334 S.C. 176, 512 S.E.2d 123 (1999). *Riddle* addressed the time for enforcement of a foreign judgment domesticated by a common-law action and held that Code section 15–39–30 does not begin to run until that foreign judgment is domesticated. *See Id.* at 182, 512 S.E.2d at 126 ("[T]he Illinois judgment was transmuted into a South Carolina judgment when it was domesticated.... [T]he ten year period for enforcement of the judgment, began on that date."). Likewise, the ten year enforcement period would not start to run until a foreign judgment is properly registered under the UEFJA.

Similarly, the result in *Commercial Credit* harmonizes with the full faith and credit protections evoked by this case. South Carolina limitations periods should not apply to a foreign judgment until that foreign judgment becomes a valid South Carolina judgment. Therefore, if a foreign judgment is valid and enforceable in that foreign jurisdiction, South Carolina should give that judgment full faith and credit under the UEFJA, which was designed to facilitate such acceptance.

The majority invokes the principle that the General Assembly is presumed to enact legislation with reference to existing law and that, therefore, the enactment of the UEFJA did not abrogate the common-law rule in *Payne*. A more compelling rule of statutory construction in this instance is the principle

that legislation enacted for a specific purpose like the UEFJA supplants the general law that previously applied in the area, particularly a general statute of limitations which was held to apply only "indirectly" to actions brought under prior law. *See Witzig v. Witzig*, 325 S.C. 363, 366, 479 S.E.2d 297, 299 (Ct.App.1996) ("It is a well settled principle of statutory construction that 'specific laws prevail over general laws, and later legislation takes precedence over earlier legislation.'" (quoting *Langley v. Pierce*, 313 S.C. 401, 403, 438 S.E.2d 242, 243 (1993))); *cf. Byrd v. Irmo High School*, 321 S.C. 426, 435, 468 S.E.2d 861, 866 (1996) ("The enactment of later statutory provisions delineating a specific disciplinary process evinces an intent by the Legislature that students use such procedures and not the earlier-enacted, more general appeals procedure.").

I recognize the majority's concern that it seems anomalous for the legislature to endow foreign judgment creditors with a potentially greater period to enforce their judgments in South Carolina than that afforded domestic creditors. I would note, though, that the actual enforcement period would be the same once the foreign judgments were registered in this state. See S.C.Code Ann. § 15–39–30. The real distinction is the potentially greater period that foreign judgment creditors would have to register their judgments in South Carolina under the UEFJA rather than under the common-law procedure. In my view, our state's law should keep pace with developing policy considerations such as those behind the UEFJA. As reflected in the Full Faith and Credit Clause of the Constitution, courts of one state must give such force and effect to a judgment of a sister state as that judgment would have in the sister state. *See NationsBank of N.C. v. Parsons*, 324 S.C. 506, 512, 477 S.E.2d 735, 738 (Ct.App.1996). The validity and effect of a foreign judgment must be determined by the laws of the state that rendered the judgment, not by the laws of this state. *Id.; PYA/Monarch, Inc. v. Sowell's Meats & Servs., Inc.*, 327 S.C. 469, 478, 486 S.E.2d 766, 771 (Ct.App.1997).

Accordingly, I would reverse.