# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Crescent Homes SC, LLC, Appellant,

v.

CJN, LLC, Respondent.

Appellate Case No. 2022-000897

———————

Appeal From Greenville County
Charles B. Simmons, Jr., Master-in-Equity

———————

Opinion No. 6093
Heard May 9, 2024 – Filed November 20, 2024

———————

**AFFIRMED**

———————

Ellis Reed-Hill Lesemann and Benjamin Houston Joyce,
both of Lesemann & Associates, LLC, of Charleston, for
Appellant.

John T. Crawford, Jr. and Francis James Warmoth, both
of Kenison Dudley & Crawford, LLC, of Greenville, for
Respondent.

———————

**KONDUROS, J.:** Crescent Homes SC, LLC (Crescent) appeals the master-in-equity's determination that a right of first refusal (ROFR) contained in a contract between Crescent and CJN, LLC was unenforceable. Crescent asserts that because no offer to purchase the property was pending at the time of the hearing, the master erred in finding the matter presented a justiciable controversy. It further maintains the master erred in finding the ROFR created an unreasonable restraint on the alienation of an interest in land based on the master's finding the ROFR lacked

specific terms.  Crescent also contends the master improperly refused to consider evidence of the conduct of the parties.  Finally, Crescent argues the master should have addressed whether the ROFR violated the rule against perpetuities (RAP) and if the master determined the ROFR violated the RAP, reformed the ROFR.  We affirm.

## FACTS/PROCEDURAL HISTORY

CJN was an LLC that purchased, owned, and developed property, and Nicholas Franchina, Charles Howard, and Jeff Howard were its three members.  Crescent was a homebuilding company owned by Edward Terry.[1]  Terry's companies and CJN have had multiple property dealings with each other.  In 2017, the parties discussed developing land CJN owned in Greenville County into a subdivision and signed a Letter of Intent generally setting forth an intent for Crescent to buy sixty-five lots from CJN in River Springs Subdivision, Phase 1 and Phase 2.

In October of 2018, the parties entered into an "Agreement for Purchase and Sale of Developed Lots" (the Agreement).  (capitalization omitted).  The Agreement provided CJN would develop thirty-two lots in Phase 1 and sell them to Crescent as individual lots; Crescent would then build single-family homes on these lots and sell them to homebuyers.  The Agreement referenced a "Future Phase"[2] on property CJN owned that was adjacent to Phase 1.  Paragraph 19 of the Agreement provided the ROFR for the Phase 2 Property:

> Right of First Refusal: At the Initial Closing, [CJN] will grant to [Crescent] a right of first refusal with respect to the lots cross-hatched and shown on **Exhibit "A-2"** as "Future Phase" and any additional lots that may from time to time may be annexed or otherwise included in the Subdivision.  A memorandum of such right of first refusal in a form reasonabl[y] acceptable to the Parties will be recorded in the public records of Greenville County at the Initial Closing.

Apart from the ROFR and its reference to Exhibit A-2, which is labeled Future Phase, the Agreement did not otherwise specifically mention the Future Phase or

[1] Terry also owned a residential development company.
[2] The Letter of Intent referred to a Phase 2, but the Agreement used the term Future Phase.  These terms refer to the same parcel of land (Phase 2 Property).

Phase 2. The parties later attempted to set the terms for the ROFR but could not agree on multiple details. Attorneys for both sides sent proposals for the memorandum "back and forth," but the parties never recorded a separate memorandum setting the terms of the ROFR.

CJN did not start development of Phase 2 at the time the parties signed the Letter of Intent or afterwards based on cost concerns.[3]

Crescent sent CJN a written notice dated September 5, 2019, asserting CJN had breached and defaulted on the Agreement in several manners. Subsequently, Crescent filed a complaint against CJN for breach of contract. Crescent asserted CJN caused the Initial Closing to be delayed by not complying with the terms of the Agreement—most significantly, by failing to maintain the lots free from trash and debris. Crescent sought specific performance of the Agreement and other remedies.

On June 26, 2020, Douglas Clark, who owned property neighboring the Phase 2 Property and whose family had once owned CJN's property, offered to purchase the Phase 2 Property from CJN for $775,000 (Clark Offer). CJN entered into a "Purchase and Sale Agreement" with Clark. (capitalization omitted). That agreement included a provision acknowledging the ROFR: "1.5 Contingencies. The obligations of [CJN] to sell the Property [are] contingent upon Crescent . . . terminating any and all rights of first refusal for the Property pursuant to that Agreement . . . ." (bolding and underlining omitted).

CJN provided a copy of the Clark Offer to Crescent, inquiring if Crescent wanted to exercise the ROFR on the Phase 2 Property. According to Franchina, Crescent responded by offering $700,000 to purchase the Phase 2 Property. Crescent then filed a lis pendens on the Phase 2 Property. Crescent also notified CJN that even though the ROFR was binding, Crescent was not required to exercise or waive the ROFR at that time because the Initial Closing had not yet occurred. Thus, Crescent asserted the ROFR had not been delivered and was not capable of being validly exercised at that time. Clark withdrew his offer because he had been attempting to buy the Phase 2 Property as a like-kind exchange and the closing could not occur in the legally required amount of time due to the lis pendens.[4]

---

[3] At the time of trial, the Phase 2 Property remained undeveloped.

[4] Clark had previously sold property for a purchase of the Phase 2 Property to qualify as a like-kind exchange. Like-kind exchanges are governed by I.R.C.

In August of 2020, the Initial Closing occurred and the parties continued thereafter to go through the process of CJN preparing the lots and Crescent buying them[5] in Phase 1.[6]

On September 18, 2020, CJN filed a lawsuit against Crescent asserting causes of action for declaratory judgment and abuse of legal process. CJN alleged in its complaint the ROFR was invalid and Crescent had filed four lis pendens for the ulterior purpose of preventing the sale of the Phase 2 Property to third parties. CJN also asserted Crescent had continually failed to conduct the Initial Closing. Additionally, on October 9, 2020, CJN answered Crescent's complaint, asserting counterclaims of breach of contract and quantum meruit/unjust enrichment and seeking remedies of specific performance and monetary damages.

On March 19, 2021, CJN filed a motion for partial summary judgment on its cause of action for declaratory judgment, seeking an order stating Crescent had no right of first refusal or other rights to real property CJN owned. It asserted the ROFR was void because it constituted an unreasonable restraint on the alienation of property and it also violated the RAP. On April 20, 2021, the master denied CJN's motion, finding there were "apparent factual disputes and novel issues that call[ed] for further inquiry into the facts of the case 'to clarify the application of the law.'"[7]

CJN continued to seek offers on the Phase 2 Property as a whole parcel. In April 2021, CJN received an offer from Opus Petrus, LLC[8] to purchase the Phase 2 Property as a complete parcel for $1.25 million (Opus Offer). CJN tendered the offer to Crescent on May 18, 2021, inquiring if Crescent wanted to exercise the ROFR. Crescent notified CJN the offer was not bona fide and did not affect the ROFR. Crescent indicated it believed the Opus Offer was an illegitimate offer manufactured in an attempt to circumvent the ROFR and extract an unreasonable purchase price from Crescent. Crescent asserted many of the offer's terms were

§ 1031, which sets out two different time constraints that both must be met for a transaction to qualify for the tax benefit.

[5] The parties used the term buy/sell to refer to this process.

[6] The parties had substantially completed the buy/sell of lots in Phase 1 at the time of trial.

[7] The master conducted a hearing on the motion, but the record does not contain a transcript of that hearing.

[8] Bouharoun was the primary owner of Opus. Franchina and Bouharoun had bought and sold real estate to each other beginning in 1996 and currently owned rental properties together.

not commercially reasonable including the purchase price, the amount of earnest money, the provision for seller financing, the financing terms and maturity date, and the omission of standard contingencies. Crescent also contended Opus did not conduct any due diligence on the Phase 2 Property or make any efforts to resolve the contingency set forth in the Opus Offer relating to septic permits. Crescent filed a new lis pendens on the Phase 2 Property in response to the Opus Offer, maintaining the offer was not bona fide. After postponing the closing date to provide CJN and Crescent an opportunity to resolve their issues, Opus subsequently withdrew its offer because of legal fees and an inability to perform any due diligence as a result of Crescent's objection. CJN began actively marketing the Phase 2 Property for sale including listing it on MLS and Costar,[9] which it had not done previously.[10]

On August 11, 2021, Crescent filed a motion to consolidate and merge its action with CJN's.[11] On October 19, 2021, CJN filed an amended complaint reiterating its previous causes of action and adding causes of action for tortious interference with a contractual relationship and unfair and deceptive trade practices. It added allegations related to the Opus Offer and contended Crescent's failure to make an offer better or equal to Opus's extinguished Crescent's rights under the ROFR. On October 22, 2021, the master granted Crescent's motion to consolidate the two cases. The master also determined the ROFR issue CJN raised in its complaint should be bifurcated for trial and set a date for that proceeding.

The master presided over the initial portion of the bifurcated proceedings, trying only CJN's cause of action for a declaration the ROFR was void and unenforceable. At the beginning of the trial, Crescent moved to dismiss that cause of action, arguing no justiciable controversy existed as the matter was not ripe

---

[9] Costar provides commercial real estate listings.

[10] As of the date of trial, despite the listing receiving some interest, CJN did not have an active contract for sale for the Phase 2 Property due to the ongoing litigation. The Phase 2 Property remained an undeveloped, single parcel, and CJN had no current plan to develop it into lots.

[11] The record does not include this motion. The record contains a letter from Crescent to CJN stating it will seek to consolidate the cases and a response from CJN stating it did not consent to that request.

because the previous offers[12] had been withdrawn.[13]  The master denied the motion to dismiss without further argument.

Following the hearing, the master issued an order determining the ROFR was unenforceable because it was an unreasonable restraint on the alienation of an interest in land, stating "based on the language used in paragraph 19, the [c]ourt is unable to interpret and/or give meaning to the parties' agreement without substantially and significantly creating terms and conditions that the parties themselves could have and should have included."

Crescent filed a motion to alter or amend pursuant to Rule 59(e), SCRCP, arguing the master erred in granting a declaratory judgment that stated the ROFR was unenforceable.  Crescent argued the ROFR was valid and enforceable.  Alternatively, Crescent contended no justiciable controversy existed as to the ROFR's enforceability.  Subsequently, the master denied the motion.  This appeal followed.

**STANDARD OF REVIEW**

"[O]ur standard of review for a declaratory judgment is based on the issue raised by the request for the judgment." *J & W Corp. of Greenwood v. Broad Creek Marina of Hilton Head, LLC*, 441 S.C. 642, 664, 896 S.E.2d 328, 340 (Ct. App. 2023).  "Declaratory judgment actions are neither legal nor equitable and[] therefore, the standard of review depends on the nature of the underlying issues." *Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009).  "To determine whether an action is legal or equitable, this [c]ourt must look to the action's main purpose as reflected by the nature of the pleadings, evidence, and character of the relief sought." *Lollis v. Dutton*, 421 S.C. 467, 478, 807 S.E.2d 723, 728 (Ct. App. 2017) (alteration in original) (quoting *Fesmire v. Digh*, 385 S.C. 296, 303, 683 S.E.2d 803, 807 (Ct. App. 2009)).  "These distinctions must be maintained even at the finest levels of a case." *J & W Corp. of Greenwood*, 441 S.C. at 664, 896 S.E.2d at 340.

---

[12] The parties made arguments about these third-party offers, but the master did not address these claims because it found these offers were not dispositive of the ultimate conclusion regarding enforceability of the ROFR.  Crescent argued the Clark Offer was made before the Initial Closing occurred and the Opus Offer was not bona fide.

[13] During a deposition, Franchina, testifying on behalf of CJN, stated "there's not a pending contract right now.  I had pending contracts . . . and they scared them off."

"An action to construe a contract is an action at law reviewable under an 'any evidence' standard." *Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001). "This [c]ourt reviews all questions of law de novo." *Lollis*, 421 S.C. at 477, 807 S.E.2d at 728 (alteration in original) (quoting *Fesmire*, 385 S.C. at 302, 683 S.E.2d at 807). "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law." *Temple v. Tec-Fab, Inc.*, 381 S.C. 597, 599-600, 675 S.E.2d 414, 415 (2009). "The [appellate] [c]ourt will not disturb the trial court's findings unless they are found to be without evidence that reasonably supports those findings." *Id.* at 600, 675 S.E.2d at 415. "In an action at law, 'we will affirm the master's factual findings if'" any evidence in the record reasonably supports them. *Query v. Burgess*, 371 S.C. 407, 410, 639 S.E.2d 455, 456 (Ct. App. 2006) (quoting *Lowcountry Open Land Tr. v. State*, 347 S.C. 96, 101-02, 552 S.E.2d 778, 781 (Ct. App. 2001)). "[T]he trial court's findings are equivalent to a jury's findings in a law action. Further, questions concerning credibility and the weight to be accorded evidence are exclusively for the trial court." *McCall v. IKON*, 380 S.C. 649, 658, 670 S.E.2d 695, 700 (Ct. App. 2008) (citation omitted). "We may not consider the case based on our view of the preponderance of the evidence, but must construe the evidence presented to the [trial court] so as to support [its] decision wherever reasonably possible." *Jordan v. Judy*, 413 S.C. 341, 348, 776 S.E.2d 96, 100 (Ct. App. 2015) (alterations in original) (quoting *Sheek v. Crimestoppers Alarm Sys.*, 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct. App. 1989)). "We must look at the evidence in the light most favorable to the respondents and eliminate from consideration all evidence to the contrary." *Id.* (quoting *Sheek*, 297 S.C. at 377, 377 S.E.2d at 133). "Our scope of review for a case heard by a Master-in-Equity who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury." *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1990).

## LAW/ANALYSIS

## I. Justiciability

Crescent argues the master erred in ruling on the enforceability of the ROFR when no sale or offer of sale for the Phase 2 Property was pending. It contends the issue of enforceability was not ripe and appropriate for judicial determination in the absence of a real and substantial controversy. It asserts the master improperly relied upon the Clark and Opus Offers in concluding a justiciable controversy

existed at the time of trial.  Crescent maintains *Peoples Federal*[14] requires a pending offer for a right of first refusal to be justiciable.  Crescent contends Clark and Opus both withdrew their offers prior to trial and therefore, no offer was pending at trial.  Crescent asserts the evidence demonstrates these two offers did not create a justiciable controversy.[15]  We disagree.

---

[14] *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Plan. Corp.*, 358 S.C. 460, 596 S.E.2d 51 (2004) (per curiam).

[15] Crescent also raises some concerns with the offers.  For the Clark Offer, it contends that because the Agreement provided CJN would grant Crescent the ROFR "at the Initial Closing" and Clark allegedly proposed to purchase the Phase 2 Property before the Initial Closing had occurred, Crescent did not have at that time the power to exercise the ROFR.  For the Opus Offer, Crescent contends it was not bona fide for multiple reasons including a lack of due diligence, the previous dealings between some members, and its being made just after denial of summary judgment.  At the beginning of the trial, Crescent moved to dismiss on the basis of justiciability, arguing the offers were no longer pending.  The circuit court summarily denied the motion at trial and in the order.  The justiciability argument may have been argued more at a prior stage, but the record does not include the summary judgment transcript and the order denying summary judgment did not reference it.  *See Solley v. Navy Fed. Credit Union, Inc.*, 397 S.C. 192, 213, 723 S.E.2d 597, 608 (Ct. App. 2012) ("The record must show that the issue was raised in the trial court."); *id.* at 214, 723 S.E.2d at 608 ("[T]he appellant has the burden of providing an adequate record on appeal."); *see also* Rule 210(h), SCACR ("Except as provided by Rule 212 and Rule 208(b)(1)(C) and (2), the appellate court will not consider any fact which does not appear in the Record on Appeal."); *Com. Credit Loans, Inc. v. Riddle*, 334 S.C. 176, 186, 512 S.E.2d 123, 129 (Ct. App. 1999) (finding an argument was not preserved for review on appeal because the transcript of the proceedings in front of the trial court was omitted from the record on appeal and thus, according to the record, the first time the appellant made the argument was in its motion for reconsideration).  The master declined to rule on the validity of the offers in the final order because it found they were not dispositive of the enforceability of the ROFR.  While Crescent's Rule 59 motion argues the master erred in finding the matter justiciable, it does not mention the validity of the offers or the master's failure to address their validity.  Accordingly, these arguments as to the validity of the offers are not preserved.  *See Caldwell v. Wiquist*, 402 S.C. 565, 576, 741 S.E.2d 583, 589 (Ct. App. 2013) ("Issues and arguments are preserved for appellate review only when they are raised to *and* ruled on by the [trial] court." (emphasis added) (quoting *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779-80 (2004))); *id.* at 576-77,

"A threshold inquiry for any court is a determination of justiciability, *i.e.*, whether the litigation presents an active case or controversy." *Holden v. Cribb*, 349 S.C. 132, 137, 561 S.E.2d 634, 637 (Ct. App. 2002) (quoting *Lennon v. S.C. Coastal Council*, 330 S.C. 414, 415, 498 S.E.2d 906, 906 (Ct. App. 1998)). "Before any action can be maintained, a justiciable controversy must be present. A justiciable controversy is a real and substantial controversy appropriate for judicial determination, as opposed to a dispute or difference of a contingent, hypothetical or abstract character." *Sloan v. Greenville County*, 356 S.C. 531, 546, 590 S.E.2d 338, 346 (Ct. App. 2003) (citation omitted). "Our courts will not address the merits of any case unless it presents a justiciable controversy." *Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 353, 815 S.E.2d 446, 451 (2018). "This [c]ourt will not . . . make an adjudication where there remains no actual controversy." *Id.* (omission in original) (quoting *Byrd v. Irmo High Sch.*, 321 S.C. 426, 430-31, 468 S.E.2d 861, 864 (1996)).

"The concept of justiciability encompasses the doctrines of ripeness, mootness, and standing." *Sloan*, 356 S.C. at 547, 590 S.E.2d at 346. "A justiciable controversy is a real and substantial controversy [that] is ripe and appropriate for judicial determination . . . ." *Id.* at 552, 590 S.E.2d at 349 (quoting *Pee Dee Elec. Coop., Inc. v. Carolina Power Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983)). Our supreme court has "explained ripeness by defining what is not ripe, stating 'an issue that is contingent, hypothetical, or abstract is not ripe for judicial review.'" *Jowers*, 423 S.C. at 353-54, 815 S.E.2d at 451 (quoting *Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty.*, 371 S.C. 224, 242, 638 S.E.2d 685, 694 (2006)).

CJN brought its action under South Carolina's Uniform Declaratory Judgment Act (the Act). *See* S.C. Code Ann. §§ 15-53-10 to -140 (2005). "To state a cause of action under . . . [the] Act, a party must demonstrate a justiciable controversy." *Consignment Sales, LLC v. Tucker Oil Co.*, 391 S.C. 266, 274, 705 S.E.2d 73, 77

---

741 S.E.2d at 589 ("[W]here an issue has not been ruled upon by the trial [court] nor raised in a post-trial motion, such issue may not be considered on appeal." (first alteration in original) (quoting *Pelican Bldg. Ctrs. of Horry-Georgetown, Inc. v. Dutton*, 311 S.C. 56, 60, 427 S.E.2d 673, 675 (1993))); *see also I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("If the losing party has raised an issue [to] the [trial] court, but the court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review.").

(Ct. App. 2010) (footnote omitted).  "A justiciable controversy exists when a concrete issue is present, there is a definite assertion of legal rights and a positive legal duty which is denied by the adverse party."  *Id.* at 274, 705 S.E.2d at 77-78 (quoting *Graham v. State Farm Mut. Auto. Ins. Co.*, 319 S.C. 69, 71, 459 S.E.2d 844, 845 (1995)).  "Declaratory judgment actions must involve an actual, justiciable controversy that is ripe for determination."  *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228 n.7, 467 S.E.2d 913, 918 n.7 (1996).

"The . . . Act provides that '[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.'"  *Sunset Cay, LLC v. City of Folly Beach*, 357 S.C. 414, 423, 593 S.E.2d 462, 466 (2004) (alteration in original) (quoting S.C. Code Ann. § 15-53-20).  "Any person interested under a . . . written contract . . . or whose rights . . . are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights . . . thereunder."  S.C. Code Ann. § 15-53-30.

"Despite the Act's broad language, it has its limits. . . .  A declaratory judgment should not address moot or abstract matters."  *Sunset Cay, LLC*, 357 S.C. at 423, 593 S.E.2d at 466.  "The . . . Act is a proper vehicle in which to bring a controversy before the court when there is an existing controversy or at least the ripening seeds of a controversy."  *Id.*; *but see Waters*, 321 S.C. at 228 n.7, 467 S.E.2d at 918 n.7 ("While some jurisdictions have made exceptions in declaratory judgment actions where the 'ripening seeds' of an actual controversy exist, we decline to utilize such exception here because the facts do not indicate an imminent violation of rights.").  "The basic purpose of the Act is to provide for declaratory judgments without awaiting a breach of existing rights."  *Sunset Cay, LLC*, 357 S.C. at 423, 593 S.E.2d at 466.  "The Act should be liberally construed to accomplish its intended purpose of affording a speedy and inexpensive method of deciding legal disputes and of settling legal rights and relationships, without awaiting a violation of the rights or a disturbance of the relationship."  *Id.* at 423-24, 593 S.E.2d at 466.

"The principles of justiciability developed by South Carolina appellate courts have grown out of the federal court's interpretation of 'the case or controversy' requirement contained in Article III of the United States Constitution."  Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 125 (3d ed. 2016).  "In determining a ripeness issue under the 'case or controversy' requirement of Article III of the United States Constitution, federal courts use a two-factor test: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration."  *Waters*, 321 S.C. at 227-28, 467 S.E.2d at 918

(quoting *Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119 (4th Cir. 1977)); *see also Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) ("[T]he question of ripeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977))). "The question of 'the fitness of the issues for judicial decision' in essence comes down to a decision as to whether the court is presented with an abstract question or a concrete controversy." *Browning-Ferris Indus. of Ala. Inc. v. Ala. Dep't of Env't Mgmt.*, 799 F.2d 1473, 1478 (11th Cir. 1986).

"[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "The basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (omission in original) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)).

"[R]ipeness is peculiarly a question of timing." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (alteration in original) (quoting *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)). "[I]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Id.* (alteration in original) (quoting *Abbott Lab'ys*, 387 U.S. at 148). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas*, 473 U.S. at 580-81).

"The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test." *Babbitt*, 442 U.S. at 297. "[W]hether particular facts are sufficiently immediate and real to constitute an actual controversy and thus present an issue fit for judicial decision is something that must be worked out on a case-by-case basis." *Browning-Ferris Indus.*, 799 F.2d at 1478.

Although the determination of ripeness is a case-by-case decision, similar cases can be helpful in determining if a matter is ripe. *See id.* at 1479 (explained

"examples of cases in some ways similar to the one under consideration" are helpful in determining if a matter is ripe). A few South Carolina cases have examined the doctrine of ripeness as it applies to rights of first refusal. Crescent points to very specific language in one of them, *Peoples Federal*, to support its position that the lack of a pending offer at the time of trial renders the determination of the enforceability of the ROFR nonjusticiable. However, an examination of *Peoples Federal*, and the cases on which it relies, demonstrates this interpretation is too narrow. In *Peoples Federal*, the defendants asserted no justiciable controversy surrounded a right of first refusal provision's enforceability because the plaintiff had not received a bona fide offer to purchase its property. *Id.* at 476-77, 596 S.E.2d at 60. Our supreme court agreed, noting "a case or controversy regarding the validity of a pre-emptive right does not accrue until the right has been asserted." *Id.* at 477, 596 S.E.2d at 60 (citing *Webb v. Reames*, 326 S.C. 444, 485 S.E.2d 384 (Ct. App. 1997)). The supreme court stated, "Absent a pending sale or offer for sale, or purchase or offer to purchase, or the presence of a third party challenging right of first refusal, there is no justiciable controversy." *Id.* (citing *Parker v. Weed*, 713 P.2d 535 (Mont. 1986)). The court explained, "Because [the plaintiff] does not have a pending offer for the purchase of its property, there is currently no justiciable controversy concerning the validity of the preemptive right provision . . . ." *Id.*

Although *Peoples Federal* stated the determination of whether a right of first refusal was enforceable in that case was not ripe because no offer for purchase was pending, the situation is different here. *See id.* In *Peoples Federal*, "there [wa]s no justiciable controversy surrounding the right of first refusal provision because Peoples *ha[d] not received* a bona fide offer to purchase its property." *Id.* at 476-77, 596 S.E.2d at 60 (emphasis added). Here, CJN received two offers to purchase. Additionally, Crescent filed multiple lis pendens once learning of the offers.[16]

Furthermore, in *Parker*, the case to which *Peoples Federal* cited, the Montana Supreme Court relied on a previous opinion, *Hardy v. Krutzfeldt*, which stated

---

[16] "A properly filed lis pendens binds subsequent purchasers or encumbrancers to all proceedings evolving from the litigation." *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 16-17, 567 S.E.2d 881, 889 (Ct. App. 2002) (quoting *S.C. Nat'l Bank v. Cook*, 291 S.C. 530, 532, 354 S.E.2d 562, 562 (1987)). "Generally, the filing of a lis pendens places a cloud on title which prevents the owner from freely disposing of the property before the litigation is resolved." *Id.* at 17, 567 S.E.2d 889.

"there has not been *any* intent by any party to sell property outside the preemptive clause, nor any third party seeking to be relieved from the preemptive clause." 713 P.2d at 536 (emphasis added) (quoting *Hardy v. Krutzfeldt*, 672 P.2d 274, 276 (Mont. 1983)). In both *Hardy* and *Parker*, it seems no offer had been made at any point. The same was true in *Peoples Federal*; no offer had ever been made.

Likewise, in *Queen's Grant II Horizontal Property Regime v. Greenwood Development Corp.*, this court "decline[d] to resolve [an] issue [concerning a right of first refusal] because there [wa]s no justiciable controversy surrounding the right of first refusal provision." 368 S.C. 342, 370, 628 S.E.2d 902, 917 (Ct. App. 2006). We found the "record [wa]s devoid of *any attempt at any time* by [the developer] to exercise its right of repurchase." *Id.* (emphasis added).

In *Webb*, referenced by the supreme court in *Peoples Federal*, this court determined, "A case or controversy regarding the validity of the pre-emptive right at issue . . . accrue[d] [once the plaintiff] in her complaint notified the . . . heirs of the grantor[] of another person's interest in purchasing the property and the [heirs] responded by asserting the right of first refusal conferred upon the grantor's heirs in the deed." *Webb*, 326 S.C. at 447, 485 S.E.2d at 385. In the present case, these conditions have been met.

Based on the foregoing, we do not read *Peoples Federal* as requiring an offer to currently be pending in order for a matter to be ripe. Once a bona fide offer has been made the matter is ripe. Neither party has provided any similar cases regarding ripeness in which offers were made and subsequently withdrawn. Further, CJN's listing the Phase 2 Property for sale on real estate services also can be interpreted as an offer for sale. Accordingly, the first prong from *Waters*, "the fitness of the issues for judicial decision," has been met. *See Waters*, 321 S.C. at 227, 467 S.E.2d at 918.

The second prong of *Waters*, "the hardship to the parties of withholding court consideration," is also met. *See id.* at 227-28, 467 S.E.2d at 918. CJN has shown hardship through losing the Clark and Opus Offers and the likelihood of facing similar obstacles as those it encountered with those offers if it receives an offer to purchase the Phase 2 Property in the future. Therefore, the master did not err in finding the matter presented a justiciable controversy.

## II.  Unreasonable Restraint on Alienation

Crescent maintains the master erred in determining the ROFR created an unreasonable restraint on the alienation of an interest in land. It argues the evidence in the record was inconsistent with the master's finding that the ROFR created an unreasonable restraint because it lacked specific terms, including (1) the terms and conditions of purchase by Crescent, (2) the time allowed for Crescent to exercise the ROFR, (3) the procedures for exercising the ROFR, (4) the purchase price of the lots, and (5) how long the ROFR would exist. It contends the master's finding is inconsistent with evidence the parties intended for Crescent to purchase the Phase 2 Property at the same price a third party offered. Crescent contends the public policy concerns supporting the rule against unreasonable restraint on the alienation as it relates to the reasonableness of time are not at issue in this case. It contends that because the parties entered into the Agreement prior to the Initial Closing, the ROFR does not include specific terms relating to timing and price. It further asserts that although the ROFR does not provide a time period for the duration of the ROFR, the record shows the parties believed a three-, five-, or ten-year period would all be reasonable. It contends the master's finding contradicts the parties' intentions. We disagree.

"Under South Carolina common law, any unreasonable limitation upon the power of alienation [of land] is against public policy and must be construed as having no force and effect." *Wise v. Poston*, 281 S.C. 574, 579, 316 S.E.2d 412, 415 (Ct. App. 1984). "An absolute restraint upon the free and unlimited power of alienation, annexed to a grant or devise in fee simple is void . . . ." *Id.*

A right of first refusal is a pre-emptive right. *See Webb*, 326 S.C. at 446, 485 S.E.2d at 385. It "is a contingent, nonvested interest in that the [property owner] might never choose to sell the property." *Id.* "It is an interest not conditioned on an event certain to occur." *Id.* "In general, a right of first refusal requires the property owner, when and if he decides to sell, to first offer the property to the holder of the right of first refusal." *Clarke v. Fine Hous., Inc.*, 438 S.C. 174, 180, 882 S.E.2d 763, 766, *cert. denied*, 143 S. Ct. 2584 (2023). "Accordingly, a right of first refusal restrains an owner's power of alienation to a degree by requiring the owner to offer the property first to the holder of the right." *Id.* at 180-81, 882 S.E.2d at 766-67.

"The question of whether a right of first refusal is enforceable turns upon whether the right <u>unreasonably</u> restrains alienation." *Id.* at 181, 882 S.E.2d at 767. In *Clarke*, our supreme court, agreeing with the Restatement of Property approach, "h[e]ld the factors to be considered in assessing whether a right of first refusal unreasonably restrains alienation include (1) the legitimacy of the purpose of the

right, (2) the price at which the right may be exercised, and (3) the procedures for exercising the right." *Id.* (citing Restatement (Third) of Property: Servitudes § 3.4 (Am. Law Inst. 2000)). However, the court explained " th[o]se factors [we]re not exclusive" and addressed an additional factor, "the lack of clarity as to what real property the [r]ight encumbers." *Id.* The court analyzed the right of first refusal in that case by looking in detail at three factors: (1) the clarity of what is encumbered; (2) the price; and (3) the procedures to exercise the right. *Id.* at 181-87, 882 S.E.2d at 767-70.

First, as to the question of the clarity of the property encumbered, the supreme court observed: "Typically, the identity of the property encumbered by a right of first refusal is obvious from a plain reading of the instrument." *Id.* at 182, 882 S.E.2d at 767. The supreme court noted that in that case, the right (the Right) was contained in a lease of parking spaces. *Id.* The lease document included an exhibit, Exhibit A, which was a written description of land that included "buildings, the leased parking spaces, other parking spaces, and other land" (the Subject Property). *Id.* In that case, the lessee brought an action for specific performance after the lessor sold all of the Subject Property described by the exhibit, including the leased parking spaces, to a buyer without first offering the Subject Property to the lessee. *Id.* at 179-80, 882 S.E.2d at 766.

The lessee relied on one provision of the lease in arguing the Right unambiguously applied to all of the Subject Property; that provision stated "Lessee hereby leases from Lessor the property generally described in Exhibit 'A' attached hereto." *Id.* at 182-83, 882 S.E.2d at 768. The buyer argued the exhibit simply identified the location of the parking spaces and nothing in the lease clarified what property the Right encumbered. *Id.* at 183, 882 S.E.2d at 768. The supreme court agreed with the buyer's argument that the uncertainty as to the property the Right encumbered supported the conclusion that the Right unreasonably restrained the alienation of property. *Id.* The supreme court found the lease was unclear as to whether the Right encumbered all of the Subject Property or only the leased parking spaces. *Id.* The Right stated in its entirety: "Lessor grants the Lessee the right of first refusal should it wish to sell." The court noted this raised the question as to what was being sold. *Id.* It found neither the provision relied on by lessee nor Exhibit A supported the conclusion that the Right applied to all of the Subject Property. *Id.* The court further determined "[o]ther provisions in the Lease strongly indicate the Right encumbers only the leased parking spaces" as those provisions described the parking spaces and one of those provisions "establishe[d] Exhibit A serve[d] solely to identify the location of the parking lot and the parking spaces leased." *Id.* The court concluded "a right of first refusal that does not identify the property it

encumbers can substantially restrain alienation of real property." *Id.* The court held that "under the facts of th[at] case, the uncertainty as to what property is encumbered by the Right supports the conclusion that the Right is an unreasonable restraint on alienation." *Id.*

Next, the supreme court looked at the price factor. *Id.* at 184, 882 S.E.2d at 768. It recognized that "[i]n general, provisions governing the price at which a right of first refusal may be exercised are important in assessing the impact on alienation. For example, a right of first refusal that may be exercised at a fixed price can substantially restrain alienation." *Id.* (citing *Selig v. State Highway Admin.*, 861 A.2d 710, 719 (Md. 2004) (explaining that with the passage of time, a fixed price may bear no relationship to market value)). The court provided that in situations in which "the holder of the right may match the offer of a third party, the restraint on alienation may be lessened." *Id.*

The supreme court determined the Right included no provision regarding price. *Id.* The lessee acknowledged the Right did not provide a fixed price but argued the Right allowed the lessor to determine the sales price and simply required he match any offer received. *Id.* Alternatively, the lessee asserted the exercise of the Right would have started a bidding war, which would have benefited the lessor. *Id.* However, the buyer maintained the omission of a provision for a method to determine the price created an unreasonable restraint on alienation. *Id.* The supreme court agreed with the buyer. *Id.* The court noted that "[a]lthough a right . . . that is silent as to price might not restrain alienation to the same degree as a right . . . containing a fixed price, a right . . . should contain some method for determining the price at which it may be exercised." *Id.* at 184, 882 S.E.2d at 769. The court indicated that "[i]f the Right [had] provided that [the lessee] could acquire the Subject Property by matching the terms of a third-party offer, the restraint on [the lessor's] power of alienation would perhaps have been minimal." *Id.*

The court explained that when a right "provides no price terms, a dispute may arise as to whether the holder of the right may purchase the property by matching a third-party offer or only after participating in a bidding war with other prospective buyers." *Id.* at 185, 882 S.E.2d at 769. The court found that possibility did not weigh in favor of a determination that such a right was not an unreasonable restraint on alienation. *Id.* The *Clarke* court determined that in that case, "the complete absence of any method for determining price weighs in favor of a finding that the Right is an unreasonable restraint on alienation." *Id.*

Last, the *Clarke* court looked at the procedures provided for exercising the Right. *Id.* The court found in that case the Right contained no procedures at all to govern the exercise of the Right. *Id.*

The court noted that a comment to the Restatement provided:

> The provisions governing exercise of the right of first refusal are important in determining its impact on alienability. Lack of clarity may cause substantial harm by making it difficult to obtain financing and exposing potential buyers to threats of litigation. Lengthy periods for exercise of rights of first refusal will also substantially affect alienability of the property.

*Id.* (quoting Restatement (Third) of Property: Servitudes § 3.4 cmt. f (Am. Law Inst. 2000)).

The court noted that "[w]hen applying this factor, courts often examine the time period within which the right can be exercised after the owner decides to sell." *Id.* "Alienation can be substantially restrained when the holder of the right has an extended time to decide whether he will purchase the property. However, when the time allowed for the exercise of the right is reasonable, the right will generally be enforced." *Id.* (citation omitted). The court found the lack of a "limitation on the time within which [the lessee] could exercise the Right after being notified of [the lessor's] desire to sell" "supports the conclusion that the Right is an unreasonable restraint on alienation." *Id.*

The lessee argued the law would imply a "reasonable time" within which he could exercise the Right, relying on *Hobgood v. Pennington*, which involved a closing period for a real estate purchase agreement. *Clarke*, 438 S.C. at 186, 882 S.E.2d at 769-70 (citing *Hobgood v. Pennington*, 300 S.C. 309, 314, 387 S.E.2d 690, 693 (Ct. App. 1989) ("When the contract does not include a provision that time is of the essence, the law implies that it is to be done within a reasonable time . . . .")). The *Clarke* court disagreed with the lessee's argument that a reasonable time should be implied, finding *Hobgood* did not support the lessee's argument because (1) the case was "factually distinguishable because it had nothing to do with a right of first refusal" and (2) the argument "misse[d] the point of the Restatement approach by arguing a court can simply imply a reasonable time requirement in which a right of first refusal must be exercised." *Id.* at 186-87, 882 S.E.2d at 770. The court noted "[t]he whole point of the Restatement is to predetermine a limited

time within which a right of first refusal must be exercised to protect the owner's power of alienation." *Id.* at 187, 882 S.E.2d at 770. The court further explained, "A judicially implied 'reasonable time' requirement would do little to protect the owner's power of alienation. Lengthy litigation over what is or is not a reasonable time under the facts of any given case will necessarily restrain alienation." *Id.*

Ultimately, the supreme court in *Clarke* concluded "[t]he Right d[id] not identify the property it encumbers, contain price provisions, or contain procedures governing the exercise of the Right" and thus, "the Right [wa]s an unreasonable restraint on alienation" and the court affirmed this court's "holding that the Right [wa]s unenforceable." *Id.*

In the present case, the *Clarke* factors all support the same conclusion here—the ROFR is an unreasonable restraint on the alienation of property. The amount of time the ROFR lasted and the procedure for exercising the ROFR were both clearly missing from the ROFR. The ROFR is unclear as to what property it encumbered because it only spoke to lots. However, no lots yet existed; the lots would have come from the tract of raw land. Accordingly, whether the ROFR would apply to the land as a whole was unclear.

Even without this uncertainty, the lack of the amount of time the ROFR would exist[17] and the procedures for executing the ROFR and determining price made the ROFR an unreasonable restraint on alienation of property. Crescent, like the lessee in *Clarke*, relies on *Hobgood* to assert a reasonable time should be implied. *Hobgood* "addressed the issue of whether a real estate purchase and sale agreement expired after the closing date contained in the agreement." *Clarke*, 438 S.C. at 186, 882 S.E.2d at 769-70 (citing *Hobgood*, 300 S.C. at 313-14, 387 S.E.2d at 692-93). This court in *Hobgood* stated, "[T]ime is not of the essence of a contract to convey land unless made so by its terms expressly or by implication from the nature of the subject matter, the object of the contract or the situation or conduct of the parties." 300 S.C. at 314, 387 S.E.2d at 693. "The *Hobgood* court held that

_____

[17] Terry, Crescent's owner, on cross-examination agreed the ROFR's language did not contain a time limit. Crescent states in its appellant's brief that the ROFR does not contain specific terms for timing and price but argues the record shows the parties believed a three-, five-, or ten-year term would all be reasonable. The paragraph that makes up the entire ROFR has no statement about time, but a separate section of the Agreement, Paragraph 21, entitled Miscellaneous, included a provision stating: "Time of Essence. Time is of the essence with respect to this Agreement." (underlining omitted).

because the contract did not include a provision stating time was of the essence, the contract had not expired." *Clarke*, 438 S.C. at 186, 882 S.E.2d at 770. Specifically, *Hobgood* provided, "When the contract does not include a provision that time is of the essence, the law implies that it is to be done within a reasonable time; and the failure to incorporate in the memorandum such a statement does not render it insufficient." *Hobgood*, 300 S.C. at 314, 387 S.E.2d at 693. As noted above, the *Clarke* court rejected the application of *Hobgood* to the facts in that case because *Hobgood* did not concern a right of first refusal and applying it misses the point of the Restatement, that a reasonable amount of time cannot simply be implied. *See Clarke*, 438 S.C. at 186-87, 882 S.E.2d at 770. We see no differences in this case that would cause *Hobgood* to apply here. Accordingly, the master did not err in finding as such and thus, finding the ROFR unenforceable. We affirm the master's determination the ROFR was an unreasonable restraint on the alienation of property.

## III. Evidence of the Parties' Conduct and Intent

Crescent argues the master erred by disregarding evidence of the parties' conduct[18] and intent as to the ROFR's terms. It asserts the master determined the ROFR was

---

[18] On appeal, Crescent's argument as to conduct concerns allegations CJN did not act in good faith in various ways, which it contends violated both the specific language of the Agreement and the implied covenant of good faith and fair dealing. The master made no mention of conduct in its order. Crescent's complaint included a cause of action for breach of contract/breach of the covenant of good faith and fair dealing. However, the master bifurcated the action, and the portion of the case tried and now on appeal was CJN's cause of action for a declaration the ROFR was void and unenforceable. Crescent mentioned CJN's conduct once in its Rule 59(e), SCRCP, motion, stating "the preponderance of the evidence showed that it was CJN who prevented [the ROFR] memorandum from being filed, which precludes CJN from reaping any benefit from the absence of a recorded memorandum. In this regard, CJN's conduct violated its duties and obligations under the Agreement." Accordingly, the argument regarding CJN's conduct is not preserved. *See Caldwell*, 402 S.C. at 576, 741 S.E.2d at 589 ("Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the [trial] court." (quoting *Elam*, 361 S.C. at 23, 602 S.E.2d at 779-80)); *see also Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("An issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review."); *Abba*

ambiguous despite not using that term and thus, the master should have relied on evidence outside of the contract to supply missing terms.[19] It maintains the master erred in finding the ROFR unenforceable due to its lack of specific and critical areas, when instead the master should have supplied missing terms from the record. It contends the master disregarded undisputed evidence the parties intended to have an enforceable right of first refusal. Crescent asserts the parties' intentions for the specific terms and conditions render the ROFR enforceable.[20] We affirm the master's ruling.

---

*Equip., Inc. v. Thomason*, 335 S.C. 477, 486, 517 S.E.2d 235, 240 (Ct. App. 1999) ("The same ground argued on appeal must have been argued to the trial [court].").

[19] Crescent further asserts the master made inconsistent findings as to the ROFR's ambiguity. Crescent did not make this argument in its Rule 59(e) motion. Therefore, it is unpreserved. *See Caldwell*, 402 S.C. at 576, 741 S.E.2d at 589 ("Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the [trial] court." (quoting *Elam*, 361 S.C. at 23, 602 S.E.2d at 779-80)); *see also Pelican Bldg. Ctrs.*, 311 S.C. at 60, 427 S.E.2d at 675 (finding unpreserved an argument the trial court's oral and written orders were inconsistent when the appellant first made that argument on appeal); *id.* ("Appellant asserts that his failure to interpose an objection in the circuit court was due to the fact that he was unaware until he received the written order [that the circuit court was making certain rulings]. We note that Rule 59(e), SCRCP, provides for a motion to alter or amend judgment and preserve the record for appeal."); *Revis v. Barrett*, 321 S.C. 206, 210, 467 S.E.2d 460, 462-63 (Ct. App. 1996) (finding an argument that the trial court's order contained a discrepancy was unpreserved when the appellants "never filed a [m]otion to [a]lter or [a]mend the [j]udgment to clarify the order, Rule 59, SCRCP, nor did they seek clarification pursuant to Rule 60(a), SCRCP"), *overruled on other grounds by Simmons v. Berkeley Elec. Coop., Inc.*, 419 S.C. 223, 797 S.E.2d 387 (2016); *Nelums v. Cousins*, 304 S.C. 306, 307-08, 403 S.E.2d 681, 681-82 (Ct. App. 1991) (per curiam) (finding a trial court's alleged failure to clarify and specify whether an easement was by necessity or was a prescriptive easement was not preserved, when the appellant had made no motion to amend the judgment).

[20] Crescent also contends in this section the master relied upon erroneous findings of fact. However, the statement of issues on appeal does not include this argument. Crescent argues this in the section for the argument "Did the master improperly refuse to consider and accept evidence as to the conduct and intent of the parties regarding the [ROFR]?" (capitalization omitted). Accordingly, we will not consider this argument. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.");

Only "if a contract is ambiguous, [is] parol evidence . . . admissible to ascertain the true meaning and intent of the parties." *HK New Plan Exch. Prop. Owner I, LLC v. Coker*, 375 S.C. 18, 23-24, 649 S.E.2d 181, 184 (Ct. App. 2007) (quoting *Koontz v. Thomas*, 333 S.C. 702, 709, 511 S.E.2d 407, 411 (Ct. App. 1999)). "[W]here a contract is silent as to a particular matter, and ambiguity thereby arises, parol evidence may be admitted to supply the deficiency and establish the true intent." *Frewil, LLC v. Price*, 411 S.C. 525, 530, 769 S.E.2d 250, 253 (Ct. App. 2015) (quoting *Columbia E. Assocs. v. Bi-Lo, Inc.*, 299 S.C. 515, 519, 386 S.E.2d 259, 261 (Ct. App. 1989)). "If the court decides the language is ambiguous, . . . evidence may be admitted to show the intent of the parties, and the determination of the parties' intent becomes a question of fact for the fact-finder." *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 594, 762 S.E.2d 705, 710 (2014).

In the initial phase of this bifurcated matter, the master addressed CJN's claim that the ROFR was void and of no effect. CJN alleged in its amended complaint "the ROFR is void as an unreasonable restraint on alienation because it lacks specificity as to duration of the right, the property subject to the right, the purchase price, and the procedures for exercising the right, among other things." In Crescent's answer, it denied the allegation without explanation. The trial consisted merely of testimony by two witnesses, with no substantial arguments by the parties.

Following the bifurcated trial, the master found the ROFR lacked numerous essential terms, stating:

> The language of the [ROFR] . . . is lacking in any number of specific and critical areas. This includes terms and conditions of purchase by Crescent, the time allowed for exercise of the [ROFR] by Crescent, the procedures for exercising the right, the purchase price of the lots, how long the right exists, among other things.

---

*State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("No point will be considered [that] is not set forth in the statement of issues on appeal."); *Dawkins v. Sell*, 434 S.C. 572, 589 n.3, 865 S.E.2d 1, 10 n.3 (Ct. App. 2021) (declining to address issues not listed in the statement of issues on appeal); *Wright v. Craft*, 372 S.C. 1, 21, 640 S.E.2d 486, 497 (Ct. App. 2006) (finding an argument not contained in an appellant's statement of issues on appeal is not properly before the appellate court).

In its 59(e) motion, Crescent only argued the master should have relied on the evidence in the record to supply a reasonable time to exercise the ROFR and how long the ROFR existed stating:

> The [master] should have given weight to the evidence in the record and testimony from both parties that provided the basis for supplying reasonable time frames in which the [ROFR] had to be exercised. Additionally, the parties presented evidence as to the reasonable length of time to which the duration of the [ROFR] could be limited.

Because the master found the ROFR lacked the numerous specific terms—terms and conditions of purchase by Crescent, the time allowed for exercise of the ROFR by Crescent, the procedures for exercising the right, and the purchase price of the lots, how long the right exists—and in Crescent's 59(e) motion, it only argues the master should have relied on extrinsic evidence to supply the missing terms as to time, only an argument that the master should have supplied the missing time terms, and none of the other terms the master found were missing, are preserved for appeal. *See Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733 ("An issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review."); *Abba Equip., Inc.*, 335 S.C. at 486, 517 S.E.2d at 240 ("The same ground argued on appeal must have been argued to the trial [court]."); *see also Pelican Bldg. Ctrs.*, 311 S.C. at 60, 427 S.E.2d at 675 (finding unpreserved an argument the trial court's oral and written orders were inconsistent when the appellant first made that argument on appeal); *id.* ("Appellant asserts that his failure to interpose an objection in the circuit court was due to the fact that he was unaware until he received the written order that the [circuit court was making certain rulings]. We note that Rule 59(e), SCRCP, provides for a motion to alter or amend judgment and preserve the record for appeal."); *Revis*, 321 S.C. at 210, 467 S.E.2d at 462-63 (finding an argument that the trial court's order contained a discrepancy was unpreserved when the appellants "never filed a [m]otion to [a]lter or [a]mend the [j]udgment to clarify the order, Rule 59, SCRCP, nor did they seek clarification pursuant to Rule 60(a), SCRCP").

Further, because the master found numerous terms were missing from the ROFR and Crescent only preserved for our review the argument that the timing terms could be supplied by looking outside the document to consider the evidence in the record, we affirm this issue. Additionally, on appeal Crescent specifically argues the master should have supplied the missing contract terms of "missing time

frames" and "procedures for executing the ROFR."[21] It asserts the evidence in the record demonstrated the parties agreed a ten-year term was reasonable. Because this argument leaves out the other terms that the master found were missing, we also affirm this issue under the two-issue rule. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 328, 730 S.E.2d 282, 284 (2012) ("Under the two[-]issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become [the] law of the case." (quoting *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010), *abrogated on other grounds by Repko v. County of Georgetown*, 424 S.C. 494, 818 S.E.2d 743 (2018))); *see also Dreher v. S.C. Dep't of Health & Envtl. Control*, 412 S.C. 244, 249-50, 772 S.E.2d 505, 508 (2015) ("'An unappealed ruling is the law of the case and requires affirmance.' Thus, should the appealing party fail to raise all of the grounds upon which [the trial] court's decision was based, those unappealed findings—whether correct or not—become the law of the case." (quoting *Shirley's Iron Works, Inc. v. City of Union*, 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013)))).

Accordingly, we affirm the master's failure to use evidence in the record from outside the ROFR to the missing terms.

## IV. The RAP

Crescent notes that because the master found the ROFR was an unreasonable restraint on the alienation of property, it declined to address whether the ROFR violated the RAP. Crescent contends that if the master had reached the issue of the RAP, even if it then found the ROFR violated the RAP, the master could have reformed the ROFR to not violate the RAP. However, our determination that the ROFR is an unreasonable restraint on the alienation of property is dispositive as to Crescent's RAP argument. Accordingly, we do not need to address Crescent's argument on the RAP. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when its determination of a prior issue is dispositive of the appeal).

---

[21] In the argument in the appellant's brief regarding the master's alleged error in determining the ROFR created an unreasonable restraint on the alienation of property, Crescent argues the record contains evidence the parties intended Crescent to be allowed to purchase the property at the same price offered by a third party.

**CONCLUSION**

We affirm the master's decision.  This matter is ripe for review and a justiciable controversy exists.  Further, the master did not err in concluding the ROFR was an unreasonable restraint on the alienation of property and thus unenforceable.  Additionally, the master did not err in not considering evidence outside of the ROFR.  Therefore, the master's decision is

**AFFIRMED.**

**WILLIAMS, C.J., concurs.**

**MCDONALD, J., concurs in result only.**